[Civ. No. 4205. Third Appellate District.—December 4, 1930.]

R. B. COLEMAN, Respondent, v. JOHN B. DAWSON, Appellant.

Edward Winterer, Winterer & Ritchie and Winterer, Combs & Ritchie for Appellant.

Bordwell, Mathews & Wadsworth, Odell S. McConnell, Ray W. Bruce and John H. Mathews for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a decree enforcing specific performance of an agreement to convey real property.

The defendant owned a tract of land four miles northeast of Porterville, consisting of 96.055 acres. The plaintiff owned five United States patents covering a machine designed to manufacture and compress certain by-products into briquettes for fuel purposes. January 10, 1924, a written agreement was executed between these parties for the sale of an undivided one-tenth interest in these patent rights for $10,000, to be paid by the promissory note of the defendant for the sum of $2,000 and the conveyance of the Porterville ranch at a valuation of $8,000. The terms and conditions of the agreement were incorporated in three documents executed at the same time. These instruments are construed together as a part of the same transaction. The first two are in the following language:

"Receipt for Payment on Account of Purchase of Interest in Letters Patent Covering Material Compressing Machine.

"The undersigned, R. B. Coleman of Los Angeles, California, the owner of United States Letters Patent Nos. 1,067,476, July 15, 1913; 1,113,121, October 6, 1914; 1,260,514, March 26, 1918; 1,260,605, March 26, 1918, and 1,310,004, July 15, 1919, covering a certain machine or mechanical device designed primarily for compressing by-products and waste materials, Herewith Acknowledge the receipt of Ten Thousand Dollars ($10,000.00) to him in hand paid by John B. Dawson of Los Angeles, California, as payment in full of an undivided *one-twentieth* interest in and to said Letters Patent and in and to said Invention and Device.

"Within five (5) days after date, the undersigned agrees to Make, Execute and Deliver to John B. Dawson, a formal Transfer and Assignment of said interest in said Letters Patent and said Invention and Agrees to cause the same to be recorded and entered on the records of the United States Patent Office at Washington, D. C.

"It is Understood and Agreed that should the owners of said Letters Patent later decide to form a corporation to finance the sale and development of said Mechanical Device and Invention, the said John B. Dawson will join with the undersigned in transferring and conveying his interest in and to said Letters Patent and said Invention to said corporation, in consideration of the issuance to him of one twelfth (1/12th) of the total capital stock thereof. This

provision, however, is not to be construed as a subscription to the capital stock of any corporation.

"Dated this Tenth day of January, 1924.

"ROBERT B. COLEMAN

"Accepted:

"JOHN B. DAWSON

"Los Angeles, Cal., Jan. 10/24

"I hereby agree to convey to R. B. Coleman free and clear of incumbrance except 2d installment of taxes 1923–24 my land consisting of 94 6/10 acres located about 4 miles Northeast from Porterville, Cal. Certificate of Title showing the land clear in my name to be furnished not to cost more than $25.00 with delivery of Deed.

"JOHN B. DAWSON"

The defendant's answer admits the execution of the first document above quoted except that it is alleged the plaintiff agreed to sell and transfer an undivided two-twentieths interest in the patents instead of only one-twentieth therein as erroneously recited in the document. This error was conceded. It was immediately corrected. The court found that the scrivener incorrectly inserted "one-twentieth" in the document instead of the agreed two-twentieths interest in the patents. The appellant may not complain of this error for the intention of the parties was promptly carried out. As a part of the same transaction, and pursuant to the understanding of the parties, the plaintiff executed and delivered to the defendant, on the same date, an assignment of an undivided two-twentieths interest in the patents, which transfer was indorsed and signed by the defendant as accepted. This assignment contained the following language:

"Now Therefore, For and in consideration of the sum of Ten Dollars ($10.00) to me in hand paid and other good and valuable consideration paid, I, said Robert B. Coleman, have sold and by these presents do hereby sell, assign and set over to the said John B. Dawson, an undivided two-twentieths (2/20) interest in and to each and all of the above-identified letters patents and application for patent, the same to be held and enjoyed by the said John B. Dawson jointly with me and not independently of me, and with the distinct understanding that neither of us can operate under said patents or assign or obligate our interests with-

out the written consent of the other, except that I, the said Robert B. Coleman can make similar assignments to others who will become partners with us in the ownership of said patents, and I do hereby authorize and request the Commissioner of Patents to issue the patent on the application above identified as Serial No. 590708, in accordance with this assignment.

"In Testimony Whereof, I have hereunto set my hand and seal at Los Angeles, California, this tenth day of January, 1924.

"Robert B. Coleman (Seal)
"Accepted: John B. Dawson.

"Witnesses:

"_____

"_____"

In part fulfillment of the foregoing agreement of sale and exchange of properties the defendant executed and delivered to the plaintiff on the same date his promissory note for $2,000, without interest, due one year from the date thereof. The balance of the $10,000, which was the consideration for the sale and exchange of properties mentioned in the first document heretofore quoted, consisted of the Porterville ranch of the agreed value of $8,000, which the defendant was to convey to the plaintiff. Upon demand the defendant refused to deed this land to the plaintiff. Thereupon this suit for specific performance was commenced.

The defendant's answer admits the execution and delivery of the instruments above quoted, but alleges the invalidity of the transaction on account of the clerical error of inserting in the first-mentioned document the word "one twentieth" instead of "two-twentieths", the transfer of which undivided shares was agreed upon by the parties. The answer further alleges that the second instrument heretofore quoted was rendered void on account of the addition thereto, by the plaintiff, after the defendant had signed and delivered the document, of a particular description of the land in question. It was then alleged the agreement was for a transfer of an unqualified two-twentieths interest in the patent rights whereas the plaintiff had assigned only a joint interest therein to be enjoyed in common with the plaintiff and other joint share owners with the restriction that "neither of us can operate under said patents or assign

or obligate our interests without the written consent of the other''. The answer further alleges that the transaction was inequitable since the real property was worth $10,000 instead of $8,000 as contemplated by the contract. Finally, the answer attempts to allege that the agreement to exchange the properties was procured by means of fraud, consisting of false representations that the plaintiff had expended $100,000 in perfecting the machine upon which he held the patents involved in this action; that the machine would successfully manufacture marketable pressed briquettes at a cost which would enable them to be sold at a good profit; that the machine could be manufactured at a cost which would justify its sale for $1600, and that the machines could be leased for a rental of $2,500 for the period of the term of the patents in addition to fifty cents royalty per ton on all briquettes manufactured; that all of said representations were false and that the defendant relied upon them and was thereby deceived and defrauded to his damage. The answer then alleges that the agreement to purchase the patent rights is void and that the defendant duly served upon the plaintiff a notice of rescission and an offer to restore to him everything of value received on account of said transaction. Thereupon the defendant prays that the agreement and the $2,000 note be annulled.

The court adopted findings favorable to the plaintiff on all the material issues. A decree was rendered directing that the Porterville ranch be forthwith conveyed to the plaintiff and that he recover $300 damages as the rental value thereof during the period that he was wrongfully deprived of the possession. From this judgment the defendant has appealed.

██ The three documents heretofore quoted appear to have been intended by the parties as a part of the same transaction. They were executed and accepted at the same time. They should, therefore, be construed together as one instrument in ascertaining the terms and intention of the contracting parties. (6 Cal. Jur. 298, sec. 181.)

██ The reference to the defendant's ranch, which appears in the foregoing instrument number 2, as ''my land consisting of 94 6/10 acres located about 4 miles northeast from Porterville, Cal.'', is an adequate description to bind the owner under the circumstances of this case. It enabled

the court to absolutely identify the tract. █ It is immaterial that the tract actually contained 96.055 acres instead of only 94.6 acres. It is apparent the owner was attempting to designate a particular ranch which he proposed to convey as part consideration for the patent rights, rather than a specific acreage. The difference in the acreage is small and unimportant. After signing and delivering the agreement to convey that ranch, the plaintiff procured and added to the instrument a more definite description of the land. When this document was shown to the defendant at the trial with the addition of the more particular description, which was appended thereto, it was read to him. He testified: "If that is a correct description of the land, I own it." Subsequently he admitted that it was a correct description of the property. Referring to this description, which was compared with that which is contained in the certificate of title, Mr. Dawson testified: "Q. Did you compare the description, Mr. Dawson? A. Yes, sir. Q. Is it a correct description? A. It is . . . Q. Now calling your attention to the Plaintiff's Exhibit 3 (the agreement to convey real estate) I will ask you if the property described in paragraph 1 of the second amended complaint is the same property as the property described in Plaintiff's Exhibit, to-wit, 94.6 acres located about four miles northeast of Porterville, Tulare County? . . . A. Yes. . . . It is the same property." The addition of the particular description of the property to the agreement to convey it does not alter the intent of the parties.

█ There was, therefore, no error in admitting this instrument in evidence over the objection of the defendant, after the addition of the specific description had been acknowledged as correct. The alteration of the document constituted no material change. An alteration of an instrument is said to be material so as to affect its validity only when it results in changing the intention of the parties so as to substantially affect their interests. (Jones on Evidence, 3d ed., p. 869, sec. 560; 1 Cal. Jur. 1068, sec. 4; *Lasky* v. *Bew*, 22 Cal. App. 393, 395 [134 Pac. 358]; 1 R. C. L. 967, sec. 4.) In the authority last cited it is said: "That is a material alteration which so changes the terms of the instrument as to give it a different legal effect from that

which it originally had and thus works some change in the rights, interest, or obligations of the parties.''

There is no merit in appellant's contention that the transfer to him of one-twelfth of the capital stock of a corporation to manufacture and sell the briquette machines was a condition precedent to his obligation to convey the real property to the plaintiff. The first document above quoted does contain the following paragraph: ''It is understood and agreed that should the owners of said Letters Patent later decide to form a corporation to finance the sale . . . of said mechanical device . . . the said John B. Dawson will . . . [convey] his interest in and to said Letters Patent . . . in consideration of the issuance to him of one-twelfth (1/12th) of the total capital stock thereof.'' This transfer of interest in the letters patent to a corporation, in the event one should be organized, was clearly a conditional agreement dependent upon the subsequent organization of such a corporation. It in no way affected the defendant's obligation to convey the land to plaintiff as part consideration for the purchase of an undivided two-twentieths interest in the letters patent. There was no definite assurance that such a corporation would be organized. Neither the organization of the corporation to manufacture and market the machine, nor the issuance to the defendant of one-twelfth of the stock of such corporation was a condition precedent to the maintenance of an action for specific performance of the agreement to convey the real estate.

The appellant asserts that the contract for exchange of properties is unjust and unfair and that neither the pleadings nor evidence supports the court's findings to the effect that the consideration was adequate and that the agreement was fair and reasonable. We think this contention is without merit. The second amended complaint alleges that the real property described in defendant's agreement to convey it ''was at all the times . . . and is now, of the value of less than eight thousand dollars ($8,000.00) ''; that ''the value of said undivided two-twentieths (2/20ths) interest in said United States Letters Patent . . . is now, and was at the time of the execution of said agreement . . . the sum of ten thousand dollars ($10,000.00); that said contract was, and is, fair, just and reasonable''. This amounts to a specific declaration that the $2,000 promissory

note, plus the asserted value of the land, does not exceed the value of the conveyed interest in the patent rights, which is alleged to be worth $10,000. No demurrer was filed to this second amended complaint. Moreover, the defendant deliberately accepted in writing both the first agreement to exchange properties and the assignment of the shares. The adequacy and fairness of the consideration is sufficiently alleged. It was an issue at the trial of the case and any defect in the form of this allegation is waived by a failure to demur to the pleading and is cured by the findings and judgment of the court regarding that issue. In 23 California Jurisprudence, 495, section 52, it is said:

"A defective allegation as to adequacy may be cured by findings and judgment for the plaintiff where the averments of the answer and the evidence offered at the trial show that both of the parties understood that that issue was presented."

On page 497 of the same authority last mentioned it is further said:

"A failure to allege the value of the land may be excused . . . where the consideration agreed on has been accepted, the acceptance constituting a waiver of any claim of inadequacy."

The appellant has directed the court's attention to no evidence which refutes the court's specific findings that "the value of said undivided two-twentieths (2/20ths) interest in said . . . Letters Patent . . . is now, and was at the time of the execution of said agreement . . . the sum of ten thousand dollars ($10,00.00); that said contract was, and is, fair, just and reasonable", and that "The real property . . . is not now, and was not, at any of the times therein mentioned, . . . of any value in excess of $2,365.00". The transcript of evidence consists of 930 pages. ■ When the appellant fails to point out any evidence to the contrary, in support of a judgment, the appellate court will assume that the evidence amply supports the findings of the trial court. An appellate court is not bound to search the record for evidence to sustain a finding. (4 C. J. 677, sec. 2576; *Davis* v. *Mene,* 52 Cal. App. 368 [198 Pac. 840].)

■ The appellant contends that the contract may not be enforced for the reason that it lacks mutuality in that the respondent cannot be required to transfer the patent rights on the records of the United States patent office.

The contract does impose upon the plaintiff the obligation to ''cause the same [transfer of interest] to be recorded and entered on the records of the United States Patent Office''. The appellant may not complain on this account, for assuming that a state court lacked jurisdiction to compel such a transfer upon federal records, nevertheless we must assume that part of the transaction has been fulfilled. The complaint alleges: ''On the 29th day of March, 1924, plaintiff caused said transfer and assignment to be recorded and entered on the records of the United States Patent Office.'' This allegation is not denied in the answer. Our attention is called to no evidence to the contrary. We must therefore assume the record amply supports the findings of the court to the effect that the transfer to the appellant was fully consummated.

Specific performance is a proper action to enforce a contract to convey patent rights of which proceeding the state courts have jurisdiction under such circumstances as are presented in the present action. (20 Cal. Jur. 876, sec. 7; *Butterfield* v. *Harris*, 20 Cal. App. 471 [129 Pac. 614]; *Stevens* v. *Privett*, 88 Cal. App. 706 [264 Pac. 549].)

Regarding the appellant's charge that the contract was procured by means of fraud, several alleged false representations are specified. Chief among these are that, (1) the plaintiff owned all patents which had been issued by the government for manufacturing briquettes, (2) the plaintiff's briquette machine was perfect, (3) he had expended $100,000 in perfecting the machine, (4) the machine could be manufactured at a cost of $1600 and could be leased for $2,500 plus a royalty of fifty cents per ton for all briquettes manufactured. Other alleged false representations are specified which relate to the mistake regarding the proportion of the total number of shares of the patent rights which were to be transferred to the appellant, and to the contingent promise on the part of Dawson to accept one-twelfth of the capital stock of a corporation in the event of its organization. These latter charges involve a construction of the contract and have been heretofore disposed of. Findings were adopted by the court adverse to the appellant on all of these charges of fraud. We are of the opinion the record adequately supports each of these findings. There is a conflict of evidence as to some of these allega-

tions of fraud. On none of these issues has the appellant attempted to quote any evidence in support of his charges. He has sometimes made a general statement of the existence of evidence which he deems to be favorable, citing the transcript where such evidence may be found, leaving the court to search the pages of a voluminous record for contradictory evidence. By the aid of respondent and much labor this conflicting testimony has been discovered. We are satisfied these charges of fraud are captious and unfounded. Mr. Coleman testified regarding these alleged false statements: "Do you know how much these patents have cost you . . . ? A. Yes sir. Q. How much, please? A. $121,700.67." Regarding the cost of manufacturing the machine, Mr. Humphrey, who operated the machine for the plaintiff in 1923, was called as a witness in behalf of the defendant and testified the machine was manufactured by the Fulton Iron Works in 1923 for $1600. There is substantial evidence to support these statements which the plaintiff is alleged to have made. Moreover, the court found that the appellant did not wholly rely upon these statements, but made an independent investigation and watched the operation of the machine. There is evidence to support this finding. After watching the machine in operation the appellant declared he was satisfied with it and would buy the shares in the patent rights if the plaintiff would take his Porterville ranch in part payment therefor.

The alleged statements that the machine could be leased for $2,500 and royalties and that it could be operated at a good profit were mere expressions of opinion, and may not furnish the basis of an action for rescission. Assertions as to the value of property or the profit which may be earned in an enterprise are ordinarily classified as mere opinions of the owner. (*Rendell* v. *Scott,* 70 Cal. 514 [11 Pac. 779]; *Lee* v. *McClelland,* 120 Cal. 147 [52 Pac. 300]; 12 R. C. L. 379, secs. 130, 131.)

In an effort to prove the allegation that the plaintiff claimed to hold all the patents which had been issued upon briquette manufacturing machines, he offered in evidence a certified copy of a patent to Emil Fernhold for an invention of a machine which he contends was designed for use for the same purpose. An objection to this offer was sustained on the ground that a proper foundation for its

reception had not been laid. There was no preliminary showing as to the nature of the machine. There was no offer to establish such proof. Our attention is not called to any request to mark this certified patent for identification. We must presume that it is not a proper part of the record on appeal. We are therefore unable to determine whether it is in fact a machine similar in character to the one which is involved in this action. The objection must therefore be assumed to have been properly sustained. In 2 California Jurisprudence, 696, section 400, it is said: "The rule that errors in excluding evidence will not be considered unless the evidence excluded, or a showing of its materiality, appears in the record, is especially true of writings offered in evidence." (*Howard* v. *Howard,* 67 Cal. App. 56, 69 [226 Pac. 984].)

 It is asserted the court has allowed damages in excess of the amount claimed as rental during the time the land was wrongfully detained from the plaintiff. The complaint alleges that "the reasonable value of the use and occupation of said real property is the sum of one hundred dollars ($100.00) per annum. . . . " The prayer of the complaint asks for $200 damages for detention of the premises for the years of 1924, 1925, and "for such other sum as may accrue before the rendition of judgment". The court found that the defendant had received as rental for the premises the sum of $100 per year for the years of 1924, 1925 and 1926, during which time the land was wrongfully detained from the plaintiff and that that sum was a reasonable value of the use of the property. The sum of $300 was thereupon awarded as damages on that account. This sum is supported by the pleadings and the evidence. The loss of rental for the year 1926 was an issue under the pleadings, and was properly allowed. (Sec. 3283, Civ. Code.) Section 580 of the Code of Civil Procedure provides in part: "The court may grant him (the plaintiff) any relief consistent with the case made by the complaint and embraced within the issue."

It was unnecessary to file a supplemental complaint to recover this rental. (21 Cal. Jur. 169, sec. 115.)

The appellant has assigned forty-two points as grounds for reversal. Many of them are interwoven and included within those essential points which have been heretofore dis-

posed of. We are unable to find any merit in any of the assignments. We are convinced that a detailed discussion of the remaining points is not warranted.

The judgment is therefore affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 3, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 2, 1931.