[Civ. No. 4206. Third Appellate District.—December 4, 1930.]

BY–PRODUCTS FUEL MACHINE COMPANY (a Corporation), Respondent, v. JOHN B. DAWSON, Appellant.

Edward Winterer, Winterer & Ritchie and Winterer, Combs & Ritchie for Appellant.

Bordwell, Mathews & Wadsworth and Odell S. McConnell for Respondent.

MR. JUSTICE THOMPSON (R. L.) Delivered the Opinion of the Court.—This is an appeal from a judgment enforcing specific performance of a contract to convey an undivided one-tenth interest in five patents in consideration of 250 shares of the capital stock of the corporation respondent. This action grows out of the same facts and was tried upon the same evidence which was adduced in the case entitled *Coleman* v. *Dawson, ante,* p. 201 [294 Pac. 13], in which an opinion of this court was this day filed.

By the terms of a written contract the defendant agreed to purchase an undivided one-tenth interest in five patents on a briquette manufacturing machine for $10,000. The purchase price was represented by defendant's note for $2,000 and his 96-acre ranch near Porterville. The one-tenth interest in the patents was transferred to the defendant. He executed and delivered to Coleman his note for $2,000, but refused to convey the ranch. In an action for specific performance of the contract, a conveyance of the ranch was directed by the court to be made. In the *Coleman* v. *Dawson* case, *supra,* this judgment was affirmed. The contract which was enforced in the last-mentioned case contained the following provision:

"It is understood and agreed that should the owners of said Letters Patent later decide to form a corporation to finance the sale and development of said Mechanical Device and Invention, the said John B. Dawson will join with the undersigned in transferring and conveying his interest in and to said Letters Patent and said Invention to said corporation, in consideration of the issuance to him of one-twelfth (1/12th) of the total capital stock thereof. . . .

"Dated this Tenth day of January, 1924.

"Robert B. Coleman

"Accepted:

"John B. Dawson"

The By-Products Fuel Manufacturing Company was duly incorporated with 3,000 shares of capital stock of the par value of $100 a share. Coleman was the original owner of the patent rights. He sold and transferred similar undivided interests therein to nine other individuals besides the appellant. He retained a large proportion of the interest in these patents and was the chief organizer of the corporation. All of the shareholders of the patents, including the appellant, joined in a written offer to transfer their respective interests therein to the respondent corporation in consideration for which shares of the capital stock of equivalent value were to be issued to them. This offer to transfer these interests in the patents contained the following language:

"We, the undersigned, subscribers to the capital stock of the By-Products Fuel Machine Company, do hereby offer to sell, assign and set over to your corporation, in full payment of Two thousand (2000) shares, par value $200,000.00 of the capital stock, the following property, to-wit, . . . [describing the patents involved] . . . "

It required the issuing of 2,000 shares of the capital stock of the corporation to comply with the foregoing offer of exchange. Since the appellant was entitled to one-twelfth of the total number of 3,000 shares, his proportion would be 250 shares of the total value of $2,500. All of the shareholders in the patents actually conveyed their interests therein to the corporation, except the appellant. He refused to do so, claiming that his contract with Coleman for the purchase of one-tenth interest in the patent rights was procured by means of fraud and therefore void.

The respondent had no legal authority to issue or deliver stock to the appellant until a permit therefor had been first secured from the corporation commission as required by the California Corporate Securities Act. (Stats. 1917, p. 673, Deering's Gen. Laws of 1923, Act 3814, sec. 3.)

April 7, 1924, the respondent corporation applied to the California corporation commission for a permit to sell 1,000 shares of the capital stock of the corporation for cash and to issue 2,000 additional shares in payment for the transferred interests in the patents. This petition named the eleven shareholders in the patents and the number of shares of capital stock in the corporation to which each would be

entitled, aggregating a total of 2,000 shares. This included 250 shares to which the appellant would be entitled upon transferring his interest in the patents. The corporation commission granted this petition August 12, 1924, only in part and conditionally. The permit provided:

"By-Products Fuel Machine Company

". . . is hereby authorized to sell and issue 1,000 shares of its capital stock as herein below set forth:

"1st: To sell and issue 500 shares of its capital stock at par, for cash . . .

"2nd: Whenever and as often as shares are sold and issued under the preceding paragraph, to issue to the 11 persons named in its application, or any of them, a certificate . . . evidencing a like number of shares of its capital stock, not exceeding 500 shares under this permit, and an aggregate of 2,000 shares under this and any future permits, in full consideration for the transfer and assignment to applicant, first to be made, of the letters patent . . . clear of all liens, liabilities or encumbrances . . .

"Applicant has an authorized capitalization of $500,000, divided into 5,000 shares of the par value of $100 each . . .

"This permit is issued upon each of. the following conditions:

"(a) That prior to the sale or issuance of any of said shares, said 11 persons named in the application shall:

"1st—Duly . . . assign and transfer to said company . . . [said] Letters Patent . . . , (a) Shall forthwith file the same for record in the United States Patent office . . . ; (b) Shall file a duplicate of such instrument . . . with said Commissioner of Corporations.

"(b) That this permit shall not become effective for any purpose unless and until said 11 persons named in the application shall execute his or their agreement in writing with said company (and file a copy thereof with the Commissioner of Corporations) in which he or they shall . . . agree . . . that in the event of the dissolution or insolvency of said company, occurring while said shares shall be so required to be held in escrow, the owners of such shares shall not, without the consent of said Commissioner, participate in any distribution of assets . . . until after the owners of all other securities shall have been paid the full face or par value thereof. . . .

. "(e) . . .

"1. Each subscription for said shares shall be upon the express condition that unless *bona fide* subscriptions for 100 shares shall have been obtained from responsible subscribers, and there shall have been paid on acount thereof the sum of $10,000 in cash, on or before the 15th day of February, 1925, such subscription may by such subscriber be, and thereupon shall be deemed to have been rescinded.

"2. . . . Otherwise, all rights of applicant to sell and issue shares under paragraph 1st hereof are suspended . . .

"(f) . . . All certificates evidencing any of the shares authorized herein, in paragraph 2nd, to be issued shall be forthwith deposited with a depositary, . . . to be held as an escrow pending the further order of said Commissioner . . . while said certificates shall be so held the holder of the shares evidenced thereby shall not sell, or offer for sale, or otherwise transfer, or agree to sell, or transfer, such shares, until the written consent of said Commissioner shall have been obtained so to do."

Under such circumstances the appellant refused to transfer to the corporation his interest in the patents. After notice, this action for specific performance was instituted. The court adopted findings favorable to the plaintiff on all essential issues and thereupon directed the transfer to be made.

The appellant contends that specific performance will not lie in the present case for the reason that the contract to purchase the one-tenth interest in the patents is void on account of fraud and on account of all the other reasons assigned on appeal in the case of *Coleman* v. *Dawson, supra.* He also asserts that the findings and judgment in this case are not supported by the evidence chiefly for the specific reason that the issuing of shares of the corporation in payment for the appellant's interest in the patents was not authorized by the corporation commissioner, and that the plaintiff is therefore unable to perform its part of the contract.

The alleged invalidity of the contract to purchase the one-tenth interest in the patents is without merit for the reasons stated in the opinion of this court which was this day filed in the case of *Coleman* v. *Dawson, supra.*

Specific performance of the agreement to convey to the plaintiff one-tenth interest in the patents will not lie

under the circumstances of this case. The contract to transfer his interest in the patents is conditional upon the actual issuance to appellant of clear title to one-twelfth of all the capital stock of the corporation, free from any condition. The evidence seems uncontradicted that the respondent has never been in a position to issue and deliver to the appellant his share of the capital stock of the corporation free from conditions, or at all. The issuance of capital stock to be delivered to the shareholders of the patents in payment therefor was limited and restricted by the commissioner to numerous conditions. No shares could be issued for this purpose until a similar number of shares had first been sold to subscribers for cash. It was stipulated that: "No stock was sold . . . except the nine shares of stock to the original nine incorporators." Even upon this condition of first selling 500 shares for cash, only 500 other shares were actually authorized to be issued in payment for the transfer of the patent rights. Eleven owners of interests in these patents, including the appellant, were entitled to a total number of 2,000 shares of the capital stock. It may reasonably be assumed the commissioner's authorization to issue 500 shares for these patent owners was intended to be divided *pro rata* among them in proportion to their respective claims. The issuance of these shares was also conditioned upon the absolute assignment of the respective interests in the patents and a transfer of the title thereto "in the United States Patent Office". It was admitted at the trial this transfer of title was not registered in the United States patent office. The authorization to issue shares of capital stock was also conditioned upon the shares being placed in escrow for certain enumerated purposes and upon the execution of an agreement to this effect on the part of each of the eleven shareholders of the patents, copies of which agreements were to be filed with the corporation commissioner. These last-mentioned agreements were not executed or filed in compliance with this condition. The authorization to issue shares of the capital stock was also made subject to the payment of "all other securities" which were held against the corporation. From the first 500 shares authorized to be sold for cash, $10,000 was required to be paid before February 15, 1925, or the subscription for such shares was deemed to have been rescinded. No shares

were sold for cash on or before that date, or at all, except the nine shares which were sold to the original incorporators. It is then provided by the terms of the authorization that unless the net sum of $8,000 derived from the sale of shares for cash is deposited prior to February 15, 1925, subject to withdrawal by the corporation only upon the written consent of the corporation commissioner, then "all rights of applicant to sell and issue shares . . . are suspended". For noncompliance with this provision we assume that all authority to issue stock for any purpose was forfeited.

Moreover, it is recited in the conditional authorization to issue shares that, "Applicant has an authorized capitalization of $500,000, divided into 5,000 shares of the par value of $100 each."

The application for authorization to issue shares was not made on this basis. It was founded upon the assumption there were but 3,000 shares of the capital stock. If in fact the company was recapitalized for 5,000 shares, the appellant was entitled to one-twelfth thereof, or 416⅔ shares. Therefore, an authorization to issue only 2,000 shares for payment to the patent owners with only 250 shares thereof to go to the appellant as his proportion would not comply with the terms of the agreement which entitled him to one-twelfth of all the shares.

From the foregoing, it is apparent the respondent was not authorized to issue or deliver to the appellant free from entanglements and conditions, the shares of capital stock of the corporation to which he is entitled. The respondent could therefore not be compelled to perform his part of the agreement for the reason that he was unable to do so. This being true, specific performance of the same contract will not lie against the appellant.

Section 3386 of the Civil Code provides: "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance."

To be entitled to specific performance, the party seeking this remedy must first substantially perform all the

conditions precedent which are required by the terms of the contract. (Sec. 3392, Civ. Code; 23 Cal. Jur. 453, sec. 23.) The judgment is reversed.