[Civ. No. 9994.   First Appellate District, Division Two.—January 17, 1936.]

EL CLARO OIL & GAS COMPANY, Respondent, v. EDWIN M. DAUGHERTY, as Commissioner of Corporations, etc., Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Appellant.

Arthur C. Fisher for Respondent.

STURTEVANT, J.—The defendant has appealed from a judgment in favor of the plaintiff and against the defendant, enjoining the latter from interfering with the sale of certain oil and gas contracts.

Some time prior to the year 1932, William L. Brewer and his associates became interested in the development of oil wells in Glenn County. They obtained numerous leases. Thereafter they caused the plaintiff corporation to be organized. To that corporation they assigned their leases and in consideration thereof certain shares of stock were issued to the promoters. No suggestion of any irregularity is made regarding any step down to this stage of the proceedings. Con-

tinuing the story, the stipulated facts, or facts found by the court, are as follows: After the plaintiff corporation was organized as above stated it had become the lessee of several tracts of land. Each tract of land was mapped or platted into lots 82½ by 132 feet, that is, each quarter section was divided into 640 lots each containing one-fourth of one acre. Except as herein expressly mentioned the record contains no suggestion of fraud. However, the parties differ as to the proper construction to be given to certain written instruments.

Before commencing the sale of the documents involved in this litigation the plaintiff caused to be formed Tehama Petroleum Corporation. That corporation has the same officers, the same stockholders, and each stockholder holds the same amount of stock in the latter company as in the former. It has its office in the same rooms and generally speaking has the same agents and employees as the plaintiff.

Having prepared an organization as shown above, the plaintiff commenced the sales which are the subject-matter of this suit and which the defendant commissioner claimed to be in violation of the Corporate Securities Act. (2 Deering's Gen. Laws, 1931, p. 1924.) The thing sold and the manner of sale was as follows: The plaintiff sent forth agents directing them to sell, and they did sell and were continuing to sell to various persons, one contract and only one contract to each assignee. Said contracts, exhibit 1, were as follows:

"EL CLARO OIL & GAS COMPANY

"LOS ANGELES, CALIF.

"ASSIGNMENT AND AGREEMENT

"The undersigned hereby sells, assigns and transfers to —————— heirs, successors and assigns, all of the assignor's right, title and interest in and to that certain oil and gas lease made and executed by J. K. and Phoebe Merry Masterson under date of April 28, 1932, to the EL CLARO OIL AND GAS COMPANY and recorded on the 12th day of May, 1932, in the office of the County Recorder of Glenn County, California, only in so far as said lease applies to and affects the following parcel of land therein contained, also that certain oil and gas lease made and executed by F. P. and Florence Masterson under date of April 30, 1932, to the EL CLARO OIL AND GAS COMPANY and recorded on the —————— day of May,

1932, in the office of the County Recorder of Glenn County, California, only in so far as said lease applies to and affects the following parcel of land therein contained:

"*Description.*"

"This assignment is made upon condition that the Assignee takes the same subject to all of the terms, conditions and covenants of the aforementioned lease to the same extent and in the same manner as if the provisions of said lease were fully set out herein.

"IN WITNESS WHEREOF, we have hereunto set our hands and seals this —— day of ————, 1932.

"EL CLARO OIL AND GAS COMPANY

"Attest:             "By ——————— Secretary

"————————        ———————— President."

When the purchaser desired the plaintiff to do so the agents were authorized to sell exhibit 2, an agreement to assign, which was of the same purport as the above instrument except on its face it was an agreement to assign instead of an outright assignment. Having made a sale the said agents were authorized, and they did attempt to have the assignee execute exhibit 3, in favor of the Tehama Petroleum Corporation. Such other assignment was as follows:

"ASSIGNMENT AND AGREEMENT

"THIS AGREEMENT, made and entered into this —— day of ————, 1932, by and between ————, hereinafter called Assignor, whether one or more, and Tehama Petroleum Corporation, hereinafter called Assignee, agrees as follows:

"WHEREAS, on the 28th day of April, 1932, a certain oil and gas lease was made and executed by J. K. and Phoebe Merry Masterson to El Claro Oil and Gas Company which lease was subsequently recorded on the 12th day of May, 1932, in the office of the County Recorder of Glenn County, California, and

"WHEREAS, on the 30th day of April, 1932, a certain oil and gas lease was made and executed by F. P. and Florence Masterson to El Claro Oil and Gas Company which lease was subsequently recorded on the —— day of May, 1932, in the office of the County Recorder of Glenn County, California, and which leases included, among other lands, the following described six hundred and forty acres:

*"Description:* N. ½ Sec. 4, Twp. 22 N., R. 5 W., and E. ½ of Sec. 9 Twp. 22 N., R. 5 W., and

"WHEREAS, subsequent to the execution of said lease there was assigned out of the same to the Assignor herein the following described parcel:

*"Description:* ——————— and ————————

"WHEREAS, the Assignor is desirous of subletting the same to the Assignee in what is commonly known as a community lease;

"IN CONSIDERATION of the foregoing, the Assignor hereby assigns to the Assignee all of his right, title and interest in and to the last above mentioned parcel contained in the aforementioned lease subject to all of the terms, conditions and covenants of said lease and of the prior assignments thereof.

"IT IS MUTUALLY UNDERSTOOD AND AGREED that while the parcel last above mentioned and other parcels comprising the six hundred and forty acres, more or less, first above mentioned are now or may be hereafter owned in severalty or in separate parcels or separate tracts, the said six hundred and forty acres shall nevertheless be developed and operated as one lease.

"That all oil and gas produced upon said 640 acres by Assignee shall be divided as follows:

" (1) 12½% to landowner;

" (2) 22½% to Assignee;

" (3) 65% to separate Assignors of the parcels of said 640 acres in proportion that the number of square footage of said land assigned by each separate owner bears to the entire 640 acres herein described.

"That the assignee and separate assignors herein are to bear production and marketing costs of entire production in proportion that the interest of each bears to the entire 640 acres, provided, however, that cost to said assignors shall not exceed $1.00 per well per each one-quarter acre per month.

"That as an additional consideration for the making of this assignment, the Assignee herein described shall expend or cause to be expended for the drilling of a well or wells on the aforementioned six hundred and forty acres the sum of Twenty-five Dollars ($25.00). Unless oil or gas is produced in commercial quantities prior to the expenditure thereof,

or unless a depth of 4,000 feet is attained prior to the expenditure thereof.

"That when and if oil or gas is produced in commercial quantities on the lands above described, the Assignee herein shall pay to the separate Assignors of said described lands, sixty-five per cent (65%) of the returns received by the Assignee from the production and sale of said oil, gas and other hydrocarbon substances, the Assignors herein each receiving his proportionate share thereof on the basis heretofore set forth herein.

"That upon obtaining production, a Bank in the State of California will be designated as a depository agent to receive and disburse to the respective parties entitled thereto, the aforementioned monies derived from the sale of oil, gas, and other hydrocarbon substances and the Assignee herein described shall pay to such depository and agent for and on behalf of all Assignors of any parcels in said six hundred and forty acres all monies to be paid as heretofore set forth.

"That such depository or agent, upon receipt of said monies shall promptly distribute the same to the various Assignors of parcels in said six hundred and forty acres in the proportion that the number of square footage of land assigned by each separate Assignor bears to the entire tract of six hundred and forty acres.

"IT IS FURTHER MUTUALLY UNDERSTOOD AND AGREED that when and if oil or gas is produced in commercial quantities in any well on the aforedescribed six hundred and forty acres that the Assignee herein shall utilize seventy-five per cent (75%) of the net returns from the production thereof, and from subsequent production, for the purpose of drilling additional wells on said six hundred forty acres only until the full number of wells provided for in the lease first herein mentioned shall have been completed. And the Assignor hereby authorizes the Assignee to withhold seventy-five per cent (75%) of the money due to the Assignor as aforesaid and to use the same for the drilling of said wells. Net returns shall mean the amount remaining after deducting landowners royalty of $12\frac{1}{2}\%$ ($\frac{1}{8}$ of gross production), together with cost of production and marketing which is not to exceed $1.00 per month, per well for each one-quarter acre lease.

"IN WITNESS WHEREOF the parties have hereunto set their hands the day and year first above written.

"——————— Assignor

"Address ———————

"TEHAMA PETROLEUM CORPORATION

"Assignee

"By ———————"

The assignees accepted either exhibit 1 or 2. No assignee was compelled or required to execute exhibit 3, but ninety per cent did so. Upwards of one thousand sales were so made.

From the facts which we have recited it seems to be clear that for all of the purposes of this litigation El Claro Oil and Gas Company and Tehama Petroleum Corporation were one and the same entity operating under different names. Any question on that subject is foreclosed by the stipulation entered into at the time of the trial. Counsel for the plaintiff stipulated, " . . . that for the purpose of this action the document that is set forth in defendant's answer as Exhibit (c) (which is hereinabove set forth as Exhibit 3) may be considered as being the agreement signed by the plaintiff in this action". The findings adopt and incorporate that stipulation. ■ In the trial court the defendant claimed, and in the briefs filed in this court he claims, that all of the documents so issued as aforesaid were illegally issued. That claim is, we think, too broad. All of said sales do not rest on the same facts. The record presents three different propositions. The first is concerned with the issuance solely of exhibit 1. It was a transfer of a portion of the major lease. It conveyed no interest in any oil to be saved by the operations of the assignor. Therefore it was not a security within the meaning of paragraph seven, division (a), section two of the Corporate Securities Act. The court so found and we think it did not err. (*People* v. *Steele*, 2 Cal. App. (2d) 370 [36 Pac. (2d) 40]; *Domestic etc. Petroleum Co.* v. *Long*, 4 Cal. (2d) 547 [51 Pac. (2d) 73].)

The second proposition is concerned with the issuance solely of exhibit 2. Except that it was an agreement to assign, instead of an outright assignment, the same remarks can be made as applicable to exhibit 2. As to exhibit 2, the findings are also supported by the evidence.

█ The third proposition presents a combination of facts that is quite different. In ninety per cent of the sales a document was issued in the form of exhibit 1 or in the form of exhibit 2 and, as a part of the same transaction, another document was executed in the form of exhibit 3. In those instances it is quite clear that the plaintiff parted with, or agreed to part with, certain parts and portions of the petroleum products thereafter to be saved by its operations. Exhibits 1 and 3 when issued together, as above stated, were a "security" and the transfer was a "sale" as clearly defined by the statutory provisions cited above. If and when such issues were made as part of the same transaction, without first obtaining a permit from the defendant, then it is equally clear that such sale was illegal. (*People* v. *Craven*, 219 Cal. 522 [27 Pac. (2d) 906]; *Domestic etc. Petroleum Co.* v. *Long, supra.*) █ Counsel pick up exhibit 1 and argue that it did not come within the provisions of the statute. Similarly they pick out certain words and make the same contention. They also pick up exhibit 3 and claim it was but a consolidation of rights into a community interest. In so presenting the subject-matter they fail to give force and effect to a fundamental rule governing the interpretation of written instruments. As the execution of either exhibit 1 or exhibit 2 was, at times, but a part of the transaction, the rest of which was the execution of exhibit 3, both should be read together. As the two documents, exhibit 1 (or exhibit 2), and exhibit 3 related to the same matters between the same parties and were made as parts of substantially one transaction, they are to be taken together. (Civ. Code, sec. 1642.) As so read they clearly fall within the doctrine of *People* v. *Craven, supra.* █ Framing the contract in two papers did not change its legal effect. It is settled law that an act which may not legally be done directly may not legally be done indirectly. Both during the trial and in the briefs presented there are many assertions to the effect that the plaintiff and its agents acted in good faith. However, good faith is not an element mentioned in the statute. It prohibits the doing of certain acts without first obtaining from the defendant a permit authorizing those acts. As it does not mention good or bad faith such factors are not involved. (*People* v. *McCalla*, 63 Cal. App. 783, 793 [220 Pac. 436].) █ Again it is claimed that the defendant was engaged in organizing operations to

sink oil wells as under a community lease. It is further asserted that it is settled law that oil wells may be lawfully developed under a community lease. Both propositions will be freely conceded, but it does not follow that one may, in one transaction, create interests in severalty and then combine the same under an alleged community lease without complying with the provisions of the Corporate Securities Act.

The questions before the trial court were nearly all questions of law, but some were questions of fact. The findings of fact were not at all times kept separate from the conclusions of law. However, the defendant in his brief consistently attacks both findings of fact and conclusions of law which are at variance with what has been said above. We are not aware of any finding of fact that was based on a conflict in the evidence. All of the allegations alleged in the defendant's answer regarding exhibit 3, when issued as part of the same transaction in connection with exhibit 1, or exhibit 2, were sustained. But in an endeavor to prevent anything in the nature of an admission there are purported findings of fact (which in reality are but conclusions of law) to the effect that the plaintiff did not "sell" exhibit 1 and exhibit 3 together and as part of the same transaction and that said two documents, taken together, were not a "security". There are also findings that said sales were not made to "the public". Whereas the evidence is all one way and in direct conflict with said findings.

It follows that the judgment should be reversed, that the findings should be reframed in accordance with the views hereinabove expressed, and that a judgment in accordance therewith should be entered. It is so ordered.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 15, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 16, 1936, and the following opinion then rendered thereon:

THE COURT.—In denying respondent's petition for a hearing in this court, we withhold our approval from those

portions of the opinion of the District Court of Appeal which hold, or can be construed as holding, that the three instruments therein considered were not, when issued separately, within the meaning of section 2, division (a), paragraph 7, of the Corporate Securities Act. It is not necessary to determine these questions at this time. We are convinced that the transactions here involved, when entered into without a permit, constitute a violation of the act.

The petition is denied.