[Civ. No. 11954. Third Dist. Mar. 11, 1971.]

J. DUDLEY LAWN, Plaintiff and Appellant, v.
CAMINO HEIGHTS, INC., et al., Defendants and Respondents.

974

## Counsel

Gilbert Moody and Oliver K. K. Nelson for Plaintiff and Appellant.

James A. Clayton for Defendants and Respondents.

## Opinion

**JANES, J.**—Plaintiff appeals from a judgment in favor of defendant Camino Heights, Inc., on plaintiff's first cause of action, which is based on a written employment contract, and in favor of the corporation and defendants Harold A. Brock and Eleanor Brock under plaintiff's second cause of action, which is a common count for services rendered.[1]

### The Facts

At all times material to this appeal, Harold A. Brock and Eleanor Brock where husband and wife and the owners of about 325 acres of agricultural land ("Camino Heights Orchards") near Placerville. In 1961, Mr. and Mrs.

---

[1]Plaintiff had judgment against the corporation on two other causes of action for money advanced by him on its behalf; no appeal was taken therefrom.

Brock were in serious financial straits, and Mr. Brock decided to try to subdivide the ranch. His experience was in agriculture and the canning industry; he had none in developing subdivisions, or in subdivision financing or the issuance of shares of stock. A friend recommended that he contact plaintiff, with whom Mr. Brock had had business dealings in 1960 at a time when the Brocks were attempting to sell, rather than subdivide, their land. Plaintiff held California licenses as a real estate broker and general contractor, and had been such for a number of years. He was also licensed as an underground construction subcontractor. He was not an attorney.

At meetings during October and November 1961, plaintiff told Mr. Brock that he (plaintiff) was experienced in subdividing, engineering, land planning, general contracting, and land development financing and sales. Plaintiff knew that Mr. Brock had no liquid assets and that Mr. Brock was without experience in all respects hereinbefore mentioned. At plaintiff's suggestion, the parties initially contemplated that a subdivision development corporation would be formed to which the Brocks would convey their ranch in exchange for shares of stock. The parties also planned to have a public stock issue. Plaintiff had prior experience in public stock issues and in preparing the necessary documents for filing with the Commissioner of Corporations to accomplish that purpose, and he so told Mr. Brock. He advised Mr. Brock of the tax consequences of exchanging real property for stock. Plaintiff also had experience in preparing incorporation papers. He told Mr. Brock that the services of an attorney were not required and that he (plaintiff) would prepare those incorporation documents. It does not appear that plaintiff lacked experience in any of the skills which he represented he possessed. Plaintiff informed Mr. Brock that a permit would be required from the Commissioner of Corporations before stock could be issued. The parties intended to obtain such permit.

Articles of incorporation of the defendant corporation were filed November 27, 1961. Plaintiff prepared the articles of incorporation, as well as the corporate bylaws, the minutes of the first meeting (drafted by him in advance of that meeting), and a waiver of notice of the first meeting.[2] Mr. Brock became president of the corporation, and he, his wife, and their son became the first directors.

About December 18, 1961, plaintiff and defendant corporation (through Mr. Brock, as its president) entered into the following written agreement addressed to plaintiff:

"Camino Heights, Inc. proposes to employ you in the capacity of con-

---

[2] At the time plaintiff drafted these documents it was proposed—he testified—that he would be one of the incorporators, and perhaps a director, of the corporation.

sultant on real estate, construction and development, and we hereby offer to employ you in such capacity for a period of two years at $8,400 per year effective immediately and payable in stock of the corporation at the end of such year of employment.

"We further agree that when residential lots are developed we will convey to you or your nominee five (5) such lots free and clear provided that you or your nominee agree to start construction within six months of such conveyance. After dwellings have been completed on the above five lots, we will make available to you or your nominee additional residential lots at the regular sales price but on a subordinated basis.

"It is our understanding that in connection with the above employment you will, if so requested by us, make available to Camino Heights, Inc. a valid general contracting license and/or real estate brokers license; and that you will be available at any reasonable time, on sufficient notice, for meetings, conferences and consultation in connection with the development of Camino Heights."

The terms of the written contract were plaintiff's idea and he drafted it. The purpose of the contract was to compensate plaintiff for his services in developing the subdivision. Because neither the Brocks nor the corporation had any money, plaintiff advanced numerous fees on behalf of the corporation, including a fee for the real property appraisal required by the Commissioner of Corporations before a stock permit could be obtained.

At no time material to this appeal did the defendant corporation have a permit to issue shares. (Corp. Code, § 25500, *infra.*) Plaintiff never received any of the consideration promised by the corporation in the contract of December 18, 1961.

### THE PLEADINGS

Plaintiff's first cause of action, alleging breach of the written contract, sought damages of $41,800 from only the defendant corporation—$16,800 for two years loss of salary at $8,400 per year, plus a minimum of $25,000 for the corporation's failure to convey five residential lots which each had an alleged minimum market value of $5,000. Plaintiff's second cause of action, on a common count for services rendered, sought damages of $41,800 from each of the three defendants. The defendants' answers generally denied the charging allegations of the complaint, and alleged numerous affirmative defenses, including that "the [written employment] contract [of December 18, 1961] . . . is void, illegal and unenforceable in that it was and is contrary to the corporate securities law and particularly to the provisions of Section 25500 of the Corporations Code . . . because at

the time the agreement was purportedly entered into no permit to issue securities had been applied for or secured from the Commissioner of Corporations of the State of California."

## THE FINDINGS

In its findings of fact, the trial court found, inter alia, "[t]hat although plaintiff has performed all of his obligations and done all things required of him under the said written agreement of December 18, 1961, the said agreement violates the Corporate Securities Act of the State of California and is therefore void and illegal and unenforceable by plaintiff"; "[t]hat although plaintiff rendered services to defendant CAMINO HEIGHTS, INC. between December 18, 1961, and December 31, 1964 [sic], which services were rendered at the special instance and request of the defendant CAMINO HEIGHTS, INC., the plaintiff is unable to recover on the Second Cause of Action [common count] for the reasonable value of his services for the reason that plaintiff is unable to recover on the First Cause of Action"; and "[t]hat except as set forth in findings of fact . . . above [regarding violation of the Corporate Securities Act], each and every affirmative defense set forth in the answer of defendant CAMINO HEIGHTS, INC. and defendants HAROLD A. BROCK and ELEANOR BROCK is untrue and without merit."

## DISCUSSION OF PLAINTIFF'S CONTENTIONS

### The Judgment in Favor of Mr. and Mrs. Brock

■ The attack on the judgment in favor of Mr. and Mrs. Brock plainly lacks merit. Plaintiff's first cause of action was against the defendant corporation only. Although his second cause of action (the common count for services rendered) was against all three defendants, the evidence was clearly sufficient to support the court's finding that "plaintiff did not render services to defendants HAROLD A. BROCK and ELEANOR BROCK as alleged in the Second Cause of Action. . . ." Plaintiff argues that "[t]he defendants Brock were benefited by . . . [his] services equally with the corporation" because "[i]t was the Brock's land that was to be developed and the Brocks, with their son, were the directors of the corporation." Plaintiff's argument overlooks that he himself testified it was contemplated by all parties that the Brock's property would be transferred to the corporation in exchange for stock and that he also testified as follows: "It was basically understood that the corporation was the one that needed these services, because . . . a sale had been made, you might say, from Brock to the corporation. Consummation of the deal was necessary only by the corporation being brought into position to complete their end of it. . . ." Moreover, in

response to cross-examination about whether all the services he had testified to were "performed for Camino Heights Incorporated," plaintiff answered, "That was my understanding at the time."

*The Judgment in Favor of the Corporation*

■ At the time plaintiff and defendant corporation entered into the contract quoted above, section 25500 of the Corporations Code—part of the Corporate Securities Law—provided in relevant part as follows: "No company shall sell any security of its own issue, . . . or offer for sale, negotiate for the sale of, or take subscriptions for any such security, until it has first applied for and secured from the commissioner [of corporations] a permit authorizing it so to do." At that same time, "sale" and "sell" within the meaning of the Corporate Securities Law were defined by section 25009 of the Corporations Code in part as follows: ". . . 'Sale' or 'sell' includes every disposition, or attempt to dispose, of a security or interest in a security for value." " 'Sale' or 'sell' includes all of the following, whether done directly or by an agent, circular letter, advertisement, or otherwise: An offer to sell; an attempt to sell; a solicitation of a sale; an option of sale; a contract of sale; a taking of a subscription; an exchange. . . ." Former section 26104 of the same code made it a public offense for any person to knowingly cause, or assist in causing, any security to be issued or sold contrary to the above provisions.

The proposed payment to plaintiff in stock of defendant corporation contemplated a "disposition"—hence "sale"—within the broad definition of section 25009. (Cf., *By-Products Fuel Machine Co.* v. *Dawson* (1930) 110 Cal.App. 214 [294 P. 19]; see 3 Witkin, Summary of Cal. Law (7th ed. 1960), Corporations, § 68, pp. 2362-2363.) Since no permit had been obtained from the Commissioner of Corporations at the time the agreement for such payment was made, defendant corporation's promise to compensate plaintiff in that manner was illegal and unenforceable even though the parties may have intended to obtain a permit before the stock was issued. (See *Wells* v. *Comstock* (1956) 46 Cal.2d 528, 531-532 [297 P.2d 961]; *Smith* v. *Sherman* (1962) 206 Cal.App.2d 93, 95-96 [23 Cal. Rptr. 487]; *Ogier* v. *Pac. Oil & Gas Development Corp.* (1955) 135 Cal. App.2d 776 [288 P.2d 101]; *El Claro Oil etc. Co.* v. *Daugherty* (1936) 11 Cal.App.2d 274, 281 [53 P.2d 1028, 55 P.2d 488].) Absent such illegality, the "$8,400 per year" mentioned in the contract might have been *itself* recoverable in lieu of stock. (See *Delafield* v. *S. F. & S. M. Ry. Co.* (1895) 5 Cal.Unrep. 71 [40 P. 958]; *Gillin* v. *Hopkins* (1915) 28 Cal.App. 579 [153 P. 724].) However, plaintiff was not entitled to a money judgment based on his annual salary, because he could not establish his contract right to it without first showing that the promise to pay him

in stock constituted an illegal consideration. (See *Kiely Corp.* v. *Gibson* (1964) 231 Cal.App.2d 39, 45 [41 Cal.Rptr. 559].)[3]

*Severability of the Promise to Convey 5 Residential Lots*

Plaintiff contends that defendant corporation's further promise to convey five residential lots was severable from its agreement to pay him in stock. "[T]he rule relating to severability of partially illegal contracts is that a contract is severable if the court can, consistent with the intent of the parties, reasonably relate the illegal consideration on one side to some specified or determinable portion of the consideration on the other side. . . ." (*Keene* v. *Harling* (1964) 61 Cal.2d 318, 321 [38 Cal.Rptr. 513, 392 P.2d 273].) "If any part . . . of several considerations for a single object, is unlawful, the entire contract is void." (Civ. Code, § 1608.)

Nothing in the written agreement of December 18, 1961, nor in the other evidence before the court, suggested that any *part* of plaintiff's services had been promised in exchange for the illegal promise to pay stock, or that the parties had allocated the rest of plaintiff's services as consideration for the legal promise to convey lots. (Compare, *Low* v. *United Pacific Ins. Co.* (1967) 67 Cal.2d 87, 91-92 [60 Cal.Rptr. 225, 429 P.2d 577]; *Keene* v. *Harling, supra,* pp. 322-324; *Ryan* v. *Mike-Ron Corp.* (1968) 259 Cal.App.2d 91, 95-96 [66 Cal.Rptr. 224].) Defendant corporation's two promises were consideration for a single object—namely, plaintiff's promise to serve as a consultant. Therefore, the promise to convey lots was not severable from the illegal promise, and cannot provide the basis for a recovery of damages under the written contract. (See *Fong* v. *Miller* (1951) 105 Cal.App.2d 411 [233 P.2d 606].)

*Recovery on the Common Count*

Plaintiff further contends that he was entitled to recover the reasonable value of his services under the common count even though the aforesaid illegality and inseverability of consideration preclude relief under his cause of action for breach of the express contract. His contention must be sustained.

In *McGillycuddy* v. *Los Verjels Land etc. Co.* (1931) 213 Cal. 145 [2 P.2d 19], "by resolution of the board of directors of defendant corporation, plaintiff, the president of said corporation, was appointed general

---

[3]"The test whether a demand connected with an illegal transaction is capable of being enforced is whether the plaintiff requires the aid of the illegal transaction to establish his case. . . ." (*Hooper* v. *Barranti* (1947) 81 Cal.App.2d 570, 576 [184 P.2d 688].)

manager, his compensation to be treasury stock of the par value of $200 per month. He rendered the services called for in the contract but the Railroad Commission denied the application of the corporation to issue the said stock, and none was ever received by him." (*Id.,* at p. 146.) The trial court awarded him the reasonable value of his services. The Supreme Court affirmed, holding as follows: "It is true, of course, that defendant corporation, being a public utility, could not issue stock without the permission of the Railroad Commission (Public Utilities Act, sec. 52; Deering's General Laws, 1923, Act 6386, p. 2724), and a contract for the issuance of such stock without a permit would be unenforceable. But the contract involved herein has no such object, as we view it. It is an agreement for the performance of certain services, the consideration being specified as stock of a certain value. The record shows that when the contract was made both plaintiff and the directors believed that the stock could be issued. The agreement, therefore, is quite distinct from a *contract to purchase stock to be issued* without a permit, where the object of the contract—purchase of the stock—is in violation of the law. Here the object—performance of personal services—was legal, and the payment of the specified compensation was rendered impossible by the decision of the Railroad Commission that the stock might not be issued. In such a case, it certainly does not follow that defendant corporation, having received the benefit of full performance by plaintiff, may entirely escape liability. It cannot, of course, be required to issue the stock. ■ But where services are performed for a consideration which turns out to be impossible of performance or unenforceable, an implied contract arises to pay the reasonable value of the services. . . ." (*Id.,* at pp. 146-147.) (Original italics.)

■ The analytical technique used in *McGillycuddy* warrants emphasis. It is significant that the court did not disagree there with the defendant corporation's contention that "the contract *to pay compensation in stock* was unenforceable because illegal. . . ." (213 Cal. at p. 146.) (Italics ours.) Indeed, the portion of the court's opinion quoted above recognized that illegality. The key to *McGillycuddy* is that the word "contract" was *not* used in that case in the sense that the promises made by the parties on both sides of an agreement, when considered *as a whole,* constitute a bilateral "contract." Whenever the court spoke of a "contract," it was addressing itself to what *one party or the other* had contracted (i.e., promised) to do. Thus, the court agreed that the *defendant's* "contract" (i.e., promise) to issue stock was unenforceable. And thus, the court held that the plaintiff's "contract" (i.e., promise) to perform services had a legal object. Even though the plaintiff in *McGillycuddy* was president of the defendant corporation, no concept of *pari delicto* was overtly referred to in that case. Instead, the court examined the legality of the *consideration*

*given by the plaintiff* in exchange for the defendant's illegal promise to pay him in stock.

A similar approach is found in *Trumbo* v. *Bank of Berkeley* (1947) 77 Cal.App.2d 704 [176 P.2d 376]. There the plaintiff recovered in the trial court under a common count for the reasonable value of services provided by him to the individual promoters of a banking corporation. The court assumed that the promoters' express promise to employ the plaintiff as vice-president, in payment for his services, was illegal. *The plaintiff himself had proposed that arrangement.* (*Id.,* at pp. 707, 709, 711.) He had "many years of banking and financial experience. . . ." (*Id.,* at p. 706.)

On appeal, the court in *Trumbo* rejected the defendants' contention that the plaintiff was *in pari delicto* and could not recover under the common count. The court said: "Appellants contend that when an illegal contract is relied upon, regardless of the form of the action in which it is presented, the court will not enforce it, but, under the doctrine of *in pari delicto,* will leave the parties where it finds them. Such cases as *Domenigoni* v. *Imperial Live Stock etc. Co.,* 189 Cal. 467 [209 P. 36], and *Haruko Takeuchi* v. *Schmuck,* 206 Cal. 782 [276 P. 345], and other similar cases are cited in support of this rule. Those cases all deal with services rendered where the acts relied upon to constitute performance were at least in part illegal. In such a situation recovery will not be permitted either on an express or implied contract. But that is not the situation here. In this case respondent was not allowed to recover for breach of the oral contract to employ, but for the reasonable value of the services rendered to the promoters prior to incorporation. There was nothing illegal or against public policy in the nature of those services. While the major consideration expected by respondent was a position in the bank, it would be most unjust and inequitable to allow the promoters to take the benefits of respondent's efforts, all of which were legal, and then to be allowed to escape all liability on the ground that the consideration they agreed to furnish was illegal. The proper rule, amply supported by authority, is thus stated in 27 California Jurisprudence page 210, section 17: 'The law does not imply a promise to pay for services illegally rendered under a contract expressly prohibited by statute. But if the services rendered under a void contract by one party thereto were not intrinsically illegal and the other party fails voluntarily to perform on his part, the former may recover as upon a quantum meruit for what the latter actually received in value, though no recovery can be had upon the contract.' " (77 Cal.App.2d at pp. 709-710.)

All cases relied on by defendant corporation in support of its argument

that plaintiff was *in pari delicto*[4] are cases wherein the "contract" (i.e., promise) of the party who was to receive the stock was solely a promise to buy those securities. Such circumstances were specifically distinguished in the *McGillycuddy* case, *supra,* 213 Cal. at p. 147.

Plaintiff has received, and can receive, no shares of stock under the written employment contract. Without question, however, in the face of the trial court's undisputed finding that "plaintiff has performed all of his obligations and done all things required of him under the said written agreement of December 18, 1961," defendant corporation will be unjustly enriched at plaintiff's expense if he cannot recover from it the reasonable value of his services.

As to the defendants Harold A. Brock and Eleanor Brock, the judgment is affirmed in all respects. As to the defendant Camino Heights, Inc., the judgment is affirmed on plaintiff's first cause of action (written employment contract) and reversed on his second cause of action (common count for services rendered). Plaintiff will recover his costs on appeal.

Pierce, P. J., and Friedman, J., concurred.

---

[4] *Wells* v. *Comstock, supra,* 46 Cal.2d 528; *Domenigoni* v. *Imperial Live Stock etc. Co.* (1922) 189 Cal. 467 [209 P. 36]; *Smith* v. *Turner* (1965) 238 Cal.App.2d 141 [47 Cal.Rptr. 582]; *Stonehocker* v. *Cassano* (1957) 154 Cal.App.2d 732 [316 P.2d 717]; *Bourke* v. *Frisk* (1949) 92 Cal.App.2d 23 [206 P.2d 407]; *Miller* v. *California Roofing Co.* (1942) 55 Cal.App.2d 136 [130 P.2d 740]; *Reno* v. *American Ice Machine Co.* (1925) 72 Cal.App. 409 [237 P. 784].