[Civ. No. 29253. Second Dist., Div. Four. Dec. 30, 1966.]

GLADE L. HAINEY, Plaintiff and Respondent, v. KENNETH D. NARIGON et al., Defendants and Appellants.

Warner, Sutton & Warner and Caryl Warner for Defendants and Appellants.

Patten & Sandford and Jules Sandford for Plaintiff and Respondent.

FOX, J.*—Plaintiff brought an action against defendants to impose a resulting trust, for declaratory relief and to quiet title. The trial court rendered judgment in favor of plaintiff on the theory of a resulting trust and ordered defendants to execute a deed to the subject property to plaintiff. Defendants have appealed.

In the latter part of 1950, defendant Kenneth Narigon, who was a World War II veteran, told plaintiff, his brother-in-law, who was not a veteran, that he did not plan to use his G. I.

*Retired Presiding Judge of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

loan which would expire shortly and that if plaintiff and his wife wanted to buy a house and make use of it, he would arrange to let them have it. Plaintiff thereafter located a veteran G. I. house for sale and placed a deposit on it. A deposit receipt and agreement was signed by plaintiff and his wife and defendants. The sale was to be financed by a Veterans Administration guaranteed loan. Plaintiff was told that the veteran loan could not go through that way. So, for that reason, the names of defendants alone were thereafter used in the purchasing and financing transaction. The escrow and loan papers were signed by defendants in the presence of plaintiff. Title was taken in the name of defendants. All payments, however, were made by plaintiff, with one exception, in the name of defendants, until the last two or three years when plaintiff sent his own checks to the loan company. Plaintiff never advised the Pasadena Savings and Loan Association or the succeeding Home Savings and Loan Company that he owned the property. Plaintiff also corresponded with the loan companies in the name of the veteran. For a period of some 12 years the veteran had no correspondence or conversation with the loan companies about this property. Plaintiff paid the taxes and insurance. The veteran did not pay any of the monthly payments except one for $68.64 on May 20, 1963, following a letter to him and his wife from Home Savings threatening to file a notice of default because of failure to make payments as agreed on the loan.

Plaintiff and his wife moved into the property early in 1951. Plaintiff[1] continued to reside there until shortly before the trial of this action when arrangements were made for his children to occupy the premises.

The principal issue raised by the defendants in their answer is that the transaction here involved is contrary to public policy.[2]

It was conceded at the trial that the property in question was the subject of a Veterans Administration guaranteed loan, pursuant to the Servicemen's Readjustment Act of 1944 (58

[1] Plaintiff and his wife were divorced some time prior to the filing of this action.

[2] On this point defendants allege that plaintiff "violated the Federal Veteran Housing Regulations and Statutes, that prohibits a non-veteran, such as plaintiff, from using the name and identity of a qualified veteran, to secure a Veterans Insured Housing Loan; that the financing and acquisition of said premises herein, involves such a federal veteran housing insured loan, and by reason thereof, plaintiff is entitled to no relief whatsoever; ..."

Stat. 268, § 500 et seq.), and the financing documents (Loan Application file, Exhibit E, and Veterans Administration Loan Guaranty Certificate, Exhibit C) attest to such fact. It was also conceded that defendant Kenneth Narigon was a veteran of World War II, and that plaintiff used the veteran rights of Narigon to secure the Veterans Administration guaranteed loan with which to acquire the use of the property in question; that plaintiff had always used the property except for the recent use of it by his children, and that he had made all payments except one for $68.64 which was made by defendants. Plaintiff alleged in his amended complaint and the trial court found the same to be true: "That at the time plaintiff purchased the property, it was understood between the plaintiff and the defendants that the defendants would have no interest whatsoever in the real property, and that they would execute and deliver any and all instruments of title which the plaintiff might demand of them."

The foregoing agreement between the parties, and the financing documents referred to, demonstrate unmistakably that this was simply an attempt to circumvent the federal statutes and regulations which prohibit assignment of the benefits conferred upon a veteran in connection with the Veterans Administration guaranty of long-term, low interest rate loans for the acquisition of a home by a veteran. It is as much against public policy as would be an outright assignment which is not permitted.

Since the agreement violates the federal statutes and regulations, and is contrary to public policy, plaintiff is not entitled to enforce it. (*Glosser* v. *Powers,* 209 Ga. 149 [71 S.E.2d 230]; *Diamond* v. *Willett* (La. App.) 37 So.2d 338; *Dunn* v. *Dunn,* 1 App.Div.2d 888 [149 N.Y.S.2d 351].)

Although plaintiff is not entitled to enforce the contract, this is not to say, in the factual context of this case, that he is not entitled to some consideration. In *Tri-Q, Inc.* v. *Sta-Hi Corp.,* 63 Cal.2d 199 [45 Cal.Rptr. 878, 404 P.2d 486], the court (at p. 220) noted the importance of effective deterrence of contracts that were violative of public policy and at the same time indicated that the forfeiture resulting from unenforceability of such a contract should not be disproportionately harsh considering the nature of the illegality, and concluded with the statement from *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 151 [308 P.2d 713], that: "In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved."

The loan in the case at bench was made and guaranteed by the Veterans Administration in 1951. The decision on this appeal cannot affect this loan, its collectability or the security behind it. Neither the Veterans Administration nor the lending institution are here involved. This is simply a controversy between private citizens.

Looking at ''the particular facts involved,'' it appears that a fair and equitable solution is to give plaintiff a lien on the property for the net amount of his financial investment in it, that is to say, the amount of the payment that he made in the initial acquisition of the property, the monthly payments that he has made, including interest, taxes, and insurance and any out-of-pocket expense in making permanent improvements, less the reasonable rental value of the property from the date plaintiff moved into it until the date of any new judgment that is entered herein in the trial court. Thus, plaintiff would be deprived of the benefit of his bargain, that is to say, the appreciation in value of the property over the years. Such a loss would no doubt serve as a deterrent to others who might conceive the idea of going into a similar deal. The forfeiture by plaintiff of the appreciation of the property would not appear to be disproportionately harsh considering the nature of his violation of public policy. Furthermore, to allow plaintiff to have the benefit of the appreciation in value of the property would be to give him an unearned profit on an invalid transaction.

Viewing the matter from the position of the defendants, the result is to prevent them from being unjustly enriched from the out-of-pocket money plaintiff has put into the property. However, this gives defendants the benefit of any appreciation in the value of the property. But as between Mr. Narigon who has veteran status for a Veterans Administration guaranteed loan for the purchase of a home for his own use and plaintiff who was not a veteran, it would appear more reasonable to give the former the benefit of any appreciation in the value of the property. He had actually earned the right to the veteran's benefit here had he sought to use it to acquire a home for himself, whereas plaintiff had not earned any such right at all.

Plaintiff's reliance on *Wright* v. *Wright,* 2 Ill.2d 246 [118 N.E.2d 280], is misplaced. In that case no question was raised as to the legality of the transaction. It was treated as the conventional resulting trust situation—that the son simply loaned to his mother the funds with which to buy the property,

that upon its purchase title was taken in the name of the son. She furnished the consideration; he took title. Under well-established principles, a resulting trust arose in her favor.

One of the findings that goes to the heart of the case is not supported by the evidence. In paragraph III of the answer it was alleged that the loan here in question was "guaranteed by the Veterans Administration." At the trial it was not disputed that the loan was a "G.I." loan guaranteed by the government. This was demonstrated by the Loan Application file (Exhibit E), the Loan Guaranty Certificate (Exhibit C), and the testimony of plaintiff concerning his effort to qualify for the "G.I." loan and his use of the name of the veteran defendant; in the face of this evidence the court found the fact of the loan guaranty to be untrue. There is no evidence whatever to support this finding.

Plaintiff makes an alternative argument for affirmance by saying that, "Even if there be violation of public policy, the judgment can be sustained under the theory of adverse possession."

This argument is not sound for two reasons:

(1) Plaintiff's possession was not adverse to defendants. His position was that he was in possession of the property under an express trust; that defendants had no interest in the property; and that they agreed to convey it to him upon demand;

(2) To affirm this judgment on the theory of adverse possession would thwart the enforcement of public policy which we have held was violated by the agreement the parties entered into.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 21, 1967.