[No. B019439. Second Dist., Div. Five. June 9, 1987.]

ZELLA JOHNSON, Plaintiff and Respondent, v.
HOUSTON O. JOHNSON, Defendant and Appellant.

## COUNSEL

Linda F. England and David A. Schafer for Defendant and Appellant.

Yanz, Heyler & Hertz and Gordon I. Yanz for Plaintiff and Respondent.

## OPINION

**EPSTEIN, J.*** —In this case, we affirm the judgment of the trial court declaring a resulting trust on certain real property. We reject the appellant's contention that relief should be denied because of a misuse of the GI loan provisions of the Servicemen's Readjustment Act of 1944 (38 U.S.C. § 1801 et seq.; hereinafter, Act).

### FACTUAL BACKGROUND

This case was tried to the court, which issued a statement of decision in which its findings are stated in detail. ■ In reviewing the trial court's decision, we must "accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under

---

* Assigned by the Chairperson of the Judicial Council.

the rule which has always prevailed [on appeal] to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157]; see also *Viner* v. *Untrecht* (1945) 26 Cal.2d 261, 264 [158 P.2d 3] (affirmance of judgment imposing resulting trust).)

The plaintiff, Zella Johnson, is the mother of defendant, Houston O. Johnson. In 1976, she lived with her elderly and ailing husband on their ranch in Lucerne Valley. Defendant urged them to move closer to his home so he could be more accessible to them. They eventually did so, renting an apartment in La Crescenta. This proved to be an unsatisfactory arrangement to the elder Johnsons, and they soon decided to purchase their own home. After a time, they found a suitable property in the Tujunga area. It was to become the subject of the instant litigation.

Defendant's parents were fully able to purchase the home through conventional financing; they had $7,500 available for that purpose. Defendant, a veteran, was eligible for GI loan financing. He urged his parents to let him use that method to purchase the property. Since only he, and not his parents, was eligible for the GI loan, title was taken in defendant's name. But it was fully understood by defendant and his parents that the latter would be the actual and beneficial owners of the property.

The Johnsons paid into escrow the entire amount necessary to close the transaction, some $1,850. (The trial court did not credit defendant's testimony that he paid an additional $1,950 into escrow.)

Plaintiff and her husband moved onto the property in February 1977. Shortly thereafter, defendant borrowed from his parents the $7,500 that they had planned to use as the down payment to purchase the property. He used the money, an interest-free loan, for real estate investments.

Payments on the GI loan amounted to $200 a month. The Johnsons sent monthly checks in that amount to defendant, who made the actual payments to the lending institution. This arrangement continued until shortly after Mr. Johnson's death, in March 1979.

After that, plaintiff's sole income was from Social Security. She agreed with defendant that she would credit him with $200 a month toward his personal loan, and that he would continue to make the monthly payments on the GI loan.

From the beginning, both parents and, later, plaintiff alone, paid all of the costs associated with maintenance of the home, with a single exception: defendant paid $165 to implant a lawn on the property. And almost from

the beginning, they pressed defendant to transfer title to them. He responded that he could not do so until six months after the purchase. He did not transfer title then, or at any time thereafter, despite his mother's repeated entreaties.

In May 1979, plaintiff discussed with defendant her plans to remodel the garage of the home into an apartment, which she could rent in order to increase her income. Defendant told her that the property was her home, and she could do with it as she wished. Plaintiff then spent $5,500 of her funds to convert the garage into an apartment.

In 1981, defendant separated from his wife and moved into the property, paying no rent. In doing so, he gave no indication that he considered himself to be the owner of the property.

Some three years later, in 1984, defendant told his mother that he was going to sell the house and that she would have to move. She declined to do so, and again asked defendant to transfer title over to her. He refused, and plaintiff brought this suit for declaration of a resulting trust and for ancillary relief.

## Issues on Appeal

Defendant raises two issues on appeal:

1. Whether illegality of the underlying GI loan bars the decree of a resulting trust.

2. Whether the court erred in the extent of the resulting trust that it decreed.

## Discussion

### I. *A Resulting Trust Was Properly Decreed*

Civil Code section 853[1] provides: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for anoth-

---

[1] Legislation enacted in 1986 repeals this statute, the repealer to become operative on July 1, 1987. (Stats. 1986, ch. 820, §§ 5, 43, No. 4 Deering's Adv. Legis. Service, pp. 944, 1000.) The repeal is part of a comprehensive revision of the law of trusts recommended by the California Law Revision Commission. In its comment, the commission explained that section 853 is omitted from the recommended new statute "because it is an incomplete and inadequate statement of the common law purchase money resulting trust;" and that its repeal "is not entitled to disturb California case law concerning resulting trusts." (Recommendation Propos-

er, a trust is presumed to result in favor of the person by or for whom such payment is made." ■ The trust that is "presumed to result" from this situation is termed a "resulting trust"; its purpose is to enforce the intentions of the parties. It is distinguished from a constructive trust, which is typically imposed to rectify fraudulent behavior. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 123, p. 5481.) Clear and convincing proof is required to support a declaration that a resulting trust exists. (*G.R. Holcomb Estate Co.* v. *Burke* (1935) 4 Cal.2d 289, 299 [48 P.2d 669].) The findings of the trial court in this case were expressly stated to be on the basis of clear and convincing evidence.

Defendant's theory in the trial court was that the parties intended that he own the property, but that his parents could live there during their lifetime, subject to making payments on the home. In effect, he argued that he was to own the property subject to a conditional life estate in favor of his parents. The trial court rejected this theory as contrary to the facts.

On appeal, defendant presents an entirely new theory, which he acknowledges that he failed to present to the trial court. He now argues there can be no resulting trust because the underlying GI loan transaction was illegal. ■ Ordinarily, a party's failure to raise an issue in the trial court precludes its consideration on appeal. (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].) Defendant seeks to avoid that result by invoking the rule that "a change in theory is permitted on appeal when a question of law only is presented on the facts appearing in the record." (*Martin* v. *Kehl* (1983) 145 Cal.App.3d 228, 239 [193 Cal.Rptr. 312].)

Defendant states the rule correctly, but it does not apply in this case because the "facts appearing in the record" do not necessarily bar the remedy decreed by the trial court.

Section 1804(c) of 38 United States Code provides that no loan may be made under the Act for the purchase or construction of residential property unless the veteran applicant certifies that he or she intends to occupy the property as a residence. ■ It is settled law that transactions in which other persons use a veteran as a "straw" in order to obtain the benefits of the Act are against public policy. (*Young* v. *Hampton* (1951) 36 Cal.2d 799, 804-805 [228 P.2d 1, 19 A.L.R.2d 830]; *Hainey* v. *Narigon* (1966) 247 Cal.App.2d 528, 531 [55 Cal.Rptr. 638].)

These cases arise out of factual contexts in which the purported beneficial owner appears to have taken a far more active part in arranging GI loan

ing the Trust Law (1986) 18 Cal. Law Revision Com. Rep., pp. 501, 793; see Prob. Code, §§ 15002, 15003.)

financing than did defendant's parents in this case. Nevertheless, it is clear that it was improper to use the Act to finance the purchase of a home under facts as found by the trial court. We therefore will assume that the underlying loan contravened public policy, and was therefore illegal.

It does not follow that the arrangement between the parties cannot be enforced. ■■ In what was to become the leading California opinion on this point, Justice Peters stated the rule on enforcement of illegal contracts in these terms: "The rule that the courts will not lend their aid to the enforcement of an illegal agreement or one against public policy is fundamentally sound. The rule was conceived for the purposes of protecting the public and the courts from imposition. It is a rule predicated upon sound public policy. But the courts should not be so enamored with the Latin phrase 'in pari delicto' that they blindly extend the rule to every case wnere illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied. That is the theory of [*Denning* v. *Taber* (1945) 70 Cal.App.2d 253 (160 P.2d 900)], and of . . . other cases . . . and we think it is the correct and more enlightened rule." (*Norwood* v. *Judd* (1949) 93 Cal.App.2d 276, 288-289 [209 P.2d 24]; see also *Tri-Q, Inc.* v. *Sta-Hi Corp.* (1965) 63 Cal.2d 199, 218-220 [45 Cal.Rptr. 878, 404 P.2d 486] (quoting *Norwood* with approval); *Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 990 [147 Cal.Rptr. 22]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 362, p. 304 (rule stated and cases collected); cf. *Lewis & Queen* v. *N.M. Ball Sons* (1957) 48 Cal.2d 141, 151 [308 P.2d 713] (express statutory prohibition against enforcement of illegal contract).)

■■ In this case, each of the *Norwood* criteria is satisfied. The transaction is completed, not executory, so application of the rule cannot protect the public except by example. No serious moral turpitude is involved on the part of plaintiff. Instead, the "one guilty of the greatest moral fault" clearly is defendant. He instigated the arrangement and then took advantage of it by making an interest-free loan of the money his parents had intended to use as a down payment for their home. Finally, application of the in pari delicto rule in this case would unjustly enrich defendant by allowing him to reap the full benefits of any appreciation in the value of the house, notwithstanding his role in the transaction and his subsequent conduct.

Defendant suggests that his mother's equities may be recognized by allowing an equitable lien in her favor equivalent to her cash investment in the house. That was the remedy provided in *Hainey* v. *Narigon, supra,* 247 Cal.App.2d at page 531. But the plaintiff in *Hainey* was not importuned to enter into the transaction by the defendant veteran, as were plaintiff and her husband in this case. To the contrary, it did not appear that the principal defendant in *Hainey* did anything beyond telling the plaintiff (his brother-in-law) that he could use his GI loan entitlement, and making a single monthly payment.

Assuming that the GI loan transaction was illegal, the effect of the illegality depends on the facts and equities of the particular case. (*Tri-Q, Inc.* v. *Sta-Hi Corp., supra,* 63 Cal.2d at pp. 218-220.) Given the facts and equities as they are presented, it can hardly be said that "a question of law only" is presented in defendant's favor. (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738].) We have no doubt but that, based on the record before us, the trial court would have been well within its discretion to make the same order as it did, even if the issue of illegality had been raised. Indeed, the egregious facts in this case would appear to almost compel that result. At the very least, it would be unfair to oblige plaintiff to defend the illegality issue for the first time on appeal, or to face a new trial. (See *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].)

## II. *The Extent of the Resulting Trust Was Correctly Determined*

█ Having decreed a resulting trust in plaintiff's favor, the trial court directed defendant to convey the property to her. Defendant argues that this remedy goes too far, for two reasons.

First, he claims that he contributed $1,950 into escrow, as opposed to $1,850 contributed by his parents. He argues that when both parties contribute to the purchase price of property, a pro tanto resulting trust should be awarded and that in computing it, subsequent loan payments must be excluded. (*Martin* v. *Kehl, supra,* 145 Cal.App.3d at p. 243.)

The short answer to this claim is that the trial court disbelieved defendant's evidence, and held that all of the payments into escrow had been made by his parents. There is substantial evidence to support the trial court's decision (a point defendant does not dispute), and we are bound by it. (*Bancroft-Whitney Co.* v. *McHugh, supra,* 166 Cal. at p. 142.)

Defendant's second argument is that only a pro tanto resulting trust should be decreed because he "lent his credit" to the loan transaction.

Federal law provides protection to the veteran against the possibility of a deficiency on default of a GI loan. (38 U.S.C. § 1817.) We do not know what efforts, if any, defendant has made to assure himself of the benefits of this statute. Beyond the possibility of a deficiency, defendant's real "contribution" to the transaction was in arranging for the GI loan. We are not provided with any argument or authority as to how a pro tanto decision might be made in these circumstances. Even if such a formula could be derived, it would hardly be just, given the facts of this case, to allow defendant to retain any share of the title in recognition of his being the lender of record.

Nevertheless, two problems remain: the technical possibility of a default, and the mechanics involved in handling the remaining payments on the loan. These matters may easily be accommodated by the retention of jurisdiction in the trial court to issue such further orders as are necessary to fairly carry out its decree. We will modify the judgment to make that retention explicit.

## DISPOSITION

The judgment is modified to provide that the trial court retains jurisdiction to make such orders as are appropriate to safeguard defendant against the contingency of liability on account of any default in payments on the loan by plaintiff or her successors. So modified, the judgment is affirmed. Plaintiff is to recover her costs on appeal.

Feinerman, P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 26, 1987.