TANG, Circuit Judge:
In this case we decide whether, in the context of a bankruptcy proceeding, a resulting trust may survive a challenge of illegal purpose under California law. At stake is who is entitled to a parcel of land: the purchasers, who attempted to circumvent federal reclamation law by putting title in the names of their children; or those children, who never paid for the land but nonetheless seek to wrest it from their parents. We reject the children’s theory of illegal purpose, hold in favor of the parents and affirm.
I
The facts are not in dispute. On January 15, 1975, John and Jessie Torrez bought 120 acres of real property located in Tulare County, California. John and Jessie made a down payment and executed a deed of trust in the amount of $67,500 in favor of the previous owners. Legal title, however, was conveyed to their son, Joseph Torrez, and his spouse Mary Torrez (Debtors). John and Jessie entered into this arrangement in order to exceed their maximum allotment of federally subsidized irrigation water from the Lower Tule River Irrigation District.[1] John and Jessie made all the *1300 payments on the deed of trust and paid all taxes on the property, improved the property, and employed a hired hand to farm the property. On July 6, 1981, the Debtors executed a promissory note for $121,500 in favor of the Bank of America and secured it with a deed of trust on the subject property. The proceeds of the loan, however, went to John and Jessie, who repaid the loan in full. No lease or other written instrument was ever executed as between John and Jessie and the Debtors.
In August of 1982, John knew that the Debtors were in a precipitous financial condition. In order to protect his investment, John directed the Debtors to convey the property to his daughter, Rachel Torrez Tristao, as trustee. The Debtors were insolvent when they executed this transaction on August 13, 1982. They received no consideration in return for this conveyance.
On January 4, 1983, the Debtors filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of California. They wished to sell the property in order to finance their reorganization in the bankruptcy proceedings. They sought an order to reconvey the property to them. John and Jessie opposed this action by way of a counterclaim to quiet title, arguing that an express oral trust existed or alternatively that the land was held in a resulting trust[2] in favor of John and Jessie. The Debtors argued that the trust, if any, was void because the purpose of the trust was illegal, i.e., to avoid federal law governing allotment of irrigation water. On May 6, 1985, the Bankruptcy Court entered judgment in favor of the Debtors on the ground that John Torrez’ illegal purpose precluded the imposition of any express or implied trust in favor of John and Jessie. The court accordingly set aside the transfer to Rachel under 11 U.S.C. § 548(a)(2).
The Bankruptcy Appellate Panel of the Ninth Circuit (BAP) reversed, rejecting the Debtors’ illegality argument. In re Torrez, 63 B.R. 751, 755 (Bankr. 9th Cir.1986). The BAP reasoned that a valid resulting trust existed in favor of John and Jessie and that the Debtors could not prevail against it since they were not bona fide purchasers.[3] Since the Debtors thus possessed nothing beyond bare legal title, the BAP held that the Debtors were not entitled to avoid the transfer to Rachel under 11 U.S.C. § 548(a). The BAP further concluded that the Debtors lacked “standing” to assert the defense of illegality to the resulting trust because they had not been harmed by John’s and Jessie’s conduct in subverting federal law. The BAP remanded with directions to the Bankruptcy Court to vacate the order that avoided the conveyance to Rachel and quieted title in the Debtors. The Debtors timely appealed. We have jurisdiction under 28 U.S.C. § 158(d).
II
The BAP made no factual determinations, and the parties do not challenge the findings of fact or statements of fact in the Bankruptcy Court opinion. Accordingly, the issues presented upon this appeal involve conclusions of law which are reviewed de novo. See In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985); In re American Mariner Industries, Inc., 734 F.2d 426, 429 (9th Cir.1984).
The first question presented is whether the BAP correctly rejected the Debtors’ defense of illegality. Assuming without deciding that John’s and Jessie’s action was illegal, we conclude that the Debtors are *1301 nevertheless precluded from successfully asserting illegality as a defense.[4]
Under California law, certain factors govern judicial recognition of illegal agreements. See Johnson v. Johnson, 192 Cal.App.3d 551, 237 Cal.Rptr. 644, 647 (1987); Wilson v. Steams, 123 Cal.App.2d 472, 482, 267 P.2d 59, 66-67 (1954). See generally 1 B.E. Witkin, Summary of California Law, Contracts § 362 at 304 (8th ed. 1973). These factors include the completed nature of the transaction, such that the public can no longer be protected by invocation of the rule that illegal agreements are not to be enforced; the absence of serious moral turpitude on the part of the party against whom the defense is asserted; the likelihood that invocation of the rule will permit the party asserting the illegality to be unjustly enriched at the expense of the other party; and disproportionality of forfeiture as weighed against the nature of the illegality. See Johnson, 237 Cal.Rptr. at 647; Homestead Supplies, Inc. v. Executive Life Insurance Co., 81 Cal.App.3d 978, 990-91, 147 Cal.Rptr. 22, 28-29 (1978); Norwood v. Judd, 93 Cal.App.2d 276, 288-89, 209 P.2d 24, 31 (1949). See generally 1 B. E. Witkin, supra.
Each criterion is satisfied in this case.
The contract is completed,[5] not executory, and thus invocation of the rule against illegality would benefit the public, in whose name the defense exists,[6] only by way of example. See Johnson, 237 Cal.Rptr. at 648. Despite their attempted circumvention of the statutory acreage limitations, John and Jessie’s conduct does not involve serious moral turpitude. No penalty for their conduct appears aside from loss of eligibility for irrigation water. See 43 C.F.R. § 426.6(h). Certainly their conduct entails no more serious moral turpitude than that involved in Johnson, see 237 Cal.Rptr. at 645-46 (circumvention of 38 U.S.C. § 1804(c)’s requirement that applicant for G.I. loan certify that he or she intends to occupy encumbered property as residence), and in Homestead Supplies, 81 Cal.App.3d at 991, 147 Cal.Rptr. at 29 (technical violation of statutory rebate and price discrimination provisions).[7] Most compelling is the *1302 likelihood of unjust enrichment of the Debtors at the expense of John and Jessie were we to uphold their defense of illegality. The Debtors have attempted to better their own position at the expense of their parents, who paid for the land, borrowed against it, and worked it. For the Debtors to benefit now from the sale of property upon which they have never paid a cent of consideration, nor worked, nor otherwise expended any effort whatsoever, would amount to enrichment which could be described only as unjust. As to disproportionality, the Debtors ask a forfeiture for conduct which would otherwise entail mere disentitlement to federally subsidized irrigation water — a highly disproportionate result. In this case, equitable principles guide us. Bankruptcy is an equitable proceeding in which equity operates within the terms of the Bankruptcy Code. See In re J.F. Hink & Son, 815 F.2d 1314, 1318 (9th Cir.1987) (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984)).
We recognize previous statements to the effect that one who takes title to land in the name of another for the purpose of defrauding the government cannot enforce a resulting trust in his favor. Restatement Second of Trusts § 444 at 405-06 (ALI 1959). California follows the Restatement approach. In Hainey v. Narigon, 247 Cal.App.2d 528, 55 Cal.Rptr. 638 (1966), the California Court of Appeal held that it was error to impose a resulting trust upon property which was purchased by the plaintiff but which was titled in the name of defendants pursuant to an agreement between the parties that allowed plaintiff to subvert the Veterans Administration loan requirements. The Hainey court reasoned that since the agreement violated federal statutes and regulations governing loans to veterans and was contrary to public policy, the plaintiff was not entitled to enforce the agreement. 247 Cal.App.2d at 530-31, 55 Cal.Rptr. at 640. On that basis, the court reversed and remanded with instructions to impose a lien on the property in favor of ts plaintiff for the net amount of his financial investment in it. See also Griffis v. Squire, 267 Cal.App.2d 461, 73 Cal.Rptr. 154 (1968) (citing Hainey).
But we find Hainey easily distinguishable from the case at bench. Essential to Hainey was the fact that the applicable statutes and regulations explicitly prohibited assignment of benefits conferred upon a veteran in connection with the VA guarantee of home loans for veterans. 247 Cal.App.2d at 531, 55 Cal.Rptr. at 640. Here, no prohibitions exist against the acquisition of excess land; instead, federal regulations provide merely for the loss of eligibility for receipt of water upon such acquisition. 43 C.F.R. § 426.6(h). Also absent from Hainey were the considerations of unjust enrichment which exist in this case — considerations recognized by the Restatement approach to resulting trusts. See Restatement Second of Trusts § 444, supra at 405. Similarly lacking in Hainey were the problems of disproportionality of forfeiture to illegality, given the court’s grant of a lien to plaintiff in the amount of his investment in the property notwithstanding his illegal conduct. See 247 Cal.App.2d at 532, 55 Cal.Rptr. at 641.
Nor does the public policy consideration of deterrence of illegal conduct preclude judicial recognition of a resulting trust on these facts. The Debtors argue that affirmance of the BAP would effectively give judicial sanction to a continuing fraudulent scheme against the federal government. Yet we have already recognized that the government is entitled under 43 C.F.R. § 426.6(h) to proceed against John and Jessie and their right to receive federally subsidized water. Any public policy objections can be adequately addressed by administrative proceedings under that section. See Lewis & Queen v. N.M. Ball Sons, 48 Cal.2d 141, 151, 308 P.2d 713, 719 (1957) (Traynor, J.) (statute providing for administrative discipline excludes by implication additional penalty involved in holding illegal contract unenforceable). The public *1303 policy of deterrence of illegal conduct would be ill-served here by unjustly enriching the Debtors in this case. See Homestead Supplies, 83 Cal.App.3d at 990, 147 Cal.Rptr. at 28 (effective deterrence may be best realized by enforcing plaintiffs case rather than by unjustly enriching defendant) (quoting Lewis & Queen, supra).
Ill
In this case, a valid resulting trust under California law existed for the benefit of John and Jessie. The Debtors possessed nothing beyond bare legal title. BAP thus correctly decided that the estate has no interest in the property. See In re Gurs, 34 B.R. 755, 757 (9th Cir.Bankr.1983); United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983).
The judgment of the Bankruptcy Appellate Panel is AFFIRMED.

. Federal statutes limit the right to receipt of federally subsidized irrigation water to landowners of parcels not exceeding 160 acres. 43 U.S.C. §§ 423e, 431, 434. While farmers may of course own more than 160 acres, they may not receive federally subsidized water for the additional acreage. That is, exceeding the acreage limitation results in loss of eligibility for water for the excess acreage. See 43 C.F.R. § 426.-6(h). John and Jessie Torrez were already receiving their maximum allotment of federally *1300 subsidized water before entering into the transaction at issue.

. Under California law, a resulting trust is implied by operation of law whenever a party pays the purchase price for real property and places title in the name of another. The trust is presumed to result in favor of the person who paid the purchase price. California Civil Code § 853, repealed, ch. 820, §§ 5, 43, 1986 Cal.Stat. 439, 505. The repeal does not disturb California case law concerning resulting trusts. See Johnson v. Johnson, 192 Cal.App.3d 551, 237 Cal.Rptr. 644, 646 n. 1 (1987) (citing Recommendation Proposing the Trust Law, 18 Cal.L.Rev. Comm. Report at 501, 793 (1986)).

. The BAP correctly applied California law to this case, which involves real property located *1301 in California. See In re Hospitality Associates, 6 B.R. 778, 780 (Bankr.D.Or.1980).

. The BAP reasoned that the Debtors lacked "standing” to raise the defense of illegality to the resulting trust in favor of John and Jessie Torrez. The Debtors argue that the BAP confused the defense of unclean hands with the defense of illegality, and that they never relied upon the defense of unclean hands below. We agree with the Debtors' contention, but nevertheless affirm.
The sole case cited in support of the BAP’s decision was Martin v. Kehl, 193 Cal.Rptr. 312, 145 Cal.App.3d 228, 240-41 n. 1 (1983). In that case, the California Court of Appeals held that a successful raising of the defense of unclean hands requires that the party raising the defense be inequitably affected by the conduct which allegedly gives rise to the defense. Id. (citing Wiley v. Wiley, 59 Cal.App.2d 840, 842, 139 P.2d 950 (1943); Bradley Co. v. Bradley, 165 Cal. 237, 242, 131 P. 750 (1913)). The BAP then concluded that Martin required a rejection of the Debtors’ illegality argument because the Debtors did not suffer inequitably by John’s and Jessie’s conduct.
Martin is inapposite. It applies not to the defense of illegality, but only to that of unclean hands. Martin notwithstanding, California law makes clear that the defense of illegality may be raised by persons who are not inequitably injured by the illegality. See e.g., Wong v. Tenneco, Inc., 39 Cal.3d 126, 216 Cal.Rptr. 412, 702 P.2d 570 (1985); Lee On v. Long, 37 Cal.2d 499, 502, 234 P.2d 9 (1951). The Debtors are such persons. See also Lee On, 234 P.2d 9-12; 1 B.E. Witkin, Summary of California Law, Contracts § 341 at 288 (8th ed. 1973); 7 Witkin, Equity § 8 at 5233; 5 B.E. Witkin, California Procedure, Pleading § 1048 at 464 (3d ed. 1985) (setting forth distinctions between illegality and unclean hands defenses).
On the basis of the failure to distinguish between the two defenses, and the consequent rejection of the illegality defense based upon an obstacle which applies only to the unclean hands defense, it appears that the BAP’s reasoning was erroneous. We may nevertheless affirm its rejection of the illegality defense. See Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985); Alcaraz v. Block, 746 F.2d 593, 602 (9th Cir.1984). See also Smith v. Block, 784 F.2d 993, 996 n. 4 (9th Cir.1986).

. We note that the strength of this first factor— the completed nature of the transaction — is diminished in a bankruptcy proceeding, where the trustee has the power to avoid various "completed” conveyances. See 11 U.S.C. §§ 544, 547(b)(4), 548(a).

. See Lee On v. Long, 37 Cal.2d 499, 503-04, 234 P.2d 9, 12 (1951), cert. denied, 342 U.S. 947, 72 S.Ct. 553, 96 L.Ed. 704 (1952).

. See also Zorich v. Zorich, 119 Ind.App. 547, 88 N.E.2d 694 (1949). In Zorich, the Indiana Court of Appeals rejected a defense of illegality with regard to certain deposits which the plaintiffs *1302 father had made in the name of his dependent children, and which he subsequently sought to recover. The Zorich court reasoned that the plaintiff’s father’s actions were malum prohibiturn and did not contain any elements of moral turpitude, and on that basis upheld recovery for the father over against the defense of illegality. 88 N.E.2d at 699.