996 F.2d 1226
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Orra Penn NATEROJ, Plaintiff,
Haim Habib, Plaintiff-Appellant,
v.
Hisashi HARUYAMA, Kokuba Corporation (U.S.A.), Chiyoda
Corporation (Guam), Defendants-Appellees.
 No. 92-15880.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 4, 1993.*
Decided June 21, 1993.
 
 Before GOODWIN, TANG and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Haim Habib appeals the sanctions imposed on him by the Superior Court of Guam and affirmed by the Appellate Division of the District Court for the District of Guam. After dismissing with prejudice a complaint filed by Habib, the Superior Court imposed the sanctions under Rule 11 of the Guam Rules of Civil Procedure, which is identical to its counterpart in the Federal Rules of Civil Procedure. The Appellate Division found the imposition of sanctions was not an abuse of discretion. We affirm.
 
 ALLEGATIONS
 
 3
 The complaint, which Habib filed on behalf of his client Orra Penn Nateroj, claimed the right to recover from Hisashi Haruyama and the Kokuba and Chiyoda Corporations ("the Corporations") based upon a contract. For the purposes of this appeal only, we assume that the facts as alleged in the complaint and summarized below are true:
 
 
 4
 Nateroj developed a relationship with the Governor of Guam, Joseph F. Ada, so that she might gain approval to build an industrial complex on Guam. She determined that the success of her project depended upon pecuniary benefits she could provide Ada. Nateroj subsequently became Ada's mistress and was known as someone who could "curry favor" with him.
 
 
 5
 Nateroj was contacted by Haruyama who claimed to be acting on behalf of the Corporations and sought approval to build a hotel on Guam which would exceed the limitations allowed by law. Nateroj arranged a meeting between Governor Ada and Haruyama. On two separate occasions Governor Ada agreed to use his influence to obtain the necessary variances from the appropriate agencies. For Ada's influence with the Subdivision Development Review Committee, Haruyama agreed to purchase $50,000 worth of campaign materials to be used by Ada in his reelection bid. In exchange for Ada's influence with the Territorial Planning Commission, Haruyama was to pay him $2.5 million and provide an open account for the purchase of campaign materials. These two agreements were discussed several times, Nateroj being present on at least one of the occasions.
 
 
 6
 Ada directed Nateroj to purchase campaign materials and gifts in Thailand, "payment for which, according to representations by Ada and Haruyama was to be made by Haruyama." Haruyama provided Nateroj with approximately $28,000 for the purchases. "Governor Ada repeatedly and personally assured plaintiff that all her expenditures for the campaign materials, gift items and related expenses will be fully paid by Haruyama." As directed by Ada, Nateroj purchased approximately $180,000 worth of campaign materials and gifts in her own name. Other than the $28,000, Haruyama failed to pay for the goods and for additional incidental expenses.
 
 PROCEEDINGS
 
 7
 In October 1990 Habib filed suit for Nateroj against Haruyama and the Corporations asserting causes of action for breach of contract, restitution for the unjust enrichment conferred upon Haruyama and the Corporations, debt, and breach of the covenant of good faith and fair dealing. Haruyama and the Corporations moved to dismiss the complaint based upon the illegality of the contract asserted therein. The trial court agreed that the complaint sought enforcement of an obviously illegal contract and dismissed with prejudice. Finding the complaint frivolous and filed for an improper purpose, the trial court also imposed sanctions on Habib pursuant to Rule 11 of the Guam Rules of Civil Procedure in the amount of $2,000.
 
 
 8
 The Appellate Division affirmed the trial court's dismissal and imposition of sanctions. Nateroj did not appeal the dismissal of her complaint. However, her attorney Habib entered a timely notice of appeal from the decision of the Appellate Division affirming sanctions against him. Only the issue of sanctions is presently before this court.
 
 ANALYSIS
 
 9
 A decision by the Appellate Division of the District Court of Guam is reviewed de novo. Lynn v. Chin Heung Int'l, Inc., 852 F.2d 1221, 1222 (9th Cir.1988). The imposition of sanctions by a trial court is reviewed by an appellate court for abuse of discretion. Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1365-66 (9th Cir.1990).
 
 
 10
 Rule 11 of the Federal Rules of Civil Procedure, which is identical to its counterpart in the Guam Rules of Civil Procedure, requires the imposition of sanctions on the signer of a filed document which is frivolous or presented for an improper purpose. Townsend, 929 F.2d at 1362. A paper is frivolous if it is "both baseless and made without a reasonable and competent inquiry." Id. The Guam Superior Court found the complaint in this case to be frivolous and filed with the intent to harass. In defending against the imposition of sanctions, Habib asserts the merits of the claims made in the complaint.
 
 
 11
 Habib argues that the complaint was not an unwarranted request of the court to enforce an illegal contract, though he does not seriously contest that the agreement between Governor Ada and Haruyama violated Guam law. See 9 Guam Code Ann. § 49.40 (1985). Habib instead contends that Nateroj and Haruyama had a separate or severable agreement than that which existed between Ada and Haruyama. Guam law provides for the enforcement of severable portions of an illegal contract; those parts of a contract with a distinct lawful object may be enforced despite the illegality of the remainder. Guam Civ.Code § 1599 (1970). California cases interpreting provisions identical to those adopted in Guam are persuasive authority. Guam Hakubotan, Inc. v. Furusawa Inv. Corp., 947 F.2d 398, 401 (9th Cir.1991), cert. denied, 112 S.Ct. 1996 (1992).
 
 
 12
 Under California law, the test for severability is whether a court asked to enforce a contract can
 
 
 13
 reasonably relate the illegal consideration on one side to some specified or determinable portion of the consideration on the other side.... Of course, if the court is unable to distinguish between the lawful part of the agreement and the unlawful part, the illegality taints the entire contract, and the entire transaction is illegal and unenforceable.
 
 
 14
 Keene v. Harling, 61 Cal.2d 318, 321, 38 Cal.Rptr. 513, 392 P.2d 273 (1964). If a contract involves money consideration which is or may be apportioned to separate items of performance, the provisions of the contract are generally thought to be severable. Id. at 323.
 
 
 15
 No part of the contract between Governor Ada and Haruyama is severable. See Nationwide Inv. Corp. v. California Funeral Serv. Inc., 40 Cal.App.3d 494, 504-05, 114 Cal.Rptr. 77 (1974); Lawn v. Camino Heights, Inc., 15 Cal.App.3d 973, 980, 93 Cal.Rptr. 621 (1971) (the defendant's "two promises were consideration for a single object--namely plaintiff's promise to serve as a consultant"). The cash and money for campaign materials were exchanged solely for Ada's influence. The entirety of the contract is void.
 
 
 16
 Neither does the complaint specify a separate agreement between Nateroj and Haruyama which might excuse Habib's conduct in filing the complaint. Ada sent Nateroj to Thailand to place orders for specific goods, "payment for which, according to representations by Ada and Haruyama was to be made by Haruyama." These "representations" are the extent of any allegation of a contract between Nateroj and Haruyama. They are not enough. In failing to establish the existence of a separate contract between Nateroj and Haruyama, Habib's contention that Thai law should apply as the place of performance of that agreement is not persuasive.
 
 
 17
 Habib further argues that the general rule against enforcement of illegal contracts should not apply because Nateroj was not in pari delicto with Governor Ada and Haruyama. Under certain circumstances, a less culpable party may enforce even an illegal contract. Redke v. Silverhurst, 6 Cal.3d 94, 103, 490 P.2d 805, 810, 98 Cal.Rptr. 293, 298 (1971), cert. denied, 405 U.S. 1041 (1972). The exception to the pari delicto doctrine allows enforcement of an illegal contract where the public cannot be protected because the unlawful part of the transaction is complete, no serious moral turpitude is involved, the plaintiff is the less culpable party, and refusal to enforce the contract results in unjust enrichment of the defendant. Tri-Q v. Sta-Hi Corp., 63 Cal.2d 199, 219, 404 P.2d 486, 498, 45 Cal.Rptr. 878, 890 (1965) (quoting Norwood v. Judd, 93 Cal.App.2d 276, 288-89, 209 P.2d 24, 31 (1949)); see also Johnson v. Johnson, 192 Cal.App.3d 551, 557, 237 Cal.Rptr. 644, 647 (1987). "[H]ow the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved." Lewis & Queen v. N.M. Ball Sons, 48 Cal.2d 141, 151, 308 P.2d 713, 719 (1957).
 
 
 18
 Habib was not justified in relying on the exception to the pari delicto doctrine. Nateroj was not a factually innocent party in this scheme. The complaint reveals that her relationship with Governor Ada began in an effort to win his approval of an industrial complex through pecuniary benefits in his favor. Haruyama contacted her about securing the necessary variances for his project and she introduced him to Ada for that purpose. She knew of the terms of the agreement between Ada and Haruyama. Nateroj may not have made or received the bribe in this case, but her functionary role arguably makes her an accomplice under Guam law. See 9 Guam Code Ann. § 4.60 (1985).
 
 
 19
 The nature of the illegality also speaks against invoking the exception to the pari delicto doctrine. The prohibited conduct in this case is not a mere technicality, but rather impacts upon the integrity of the political system. Though the act has already been accomplished, the court's recognition of the contract would encourage similar conduct in the future. There is no public interest which would be furthered by enforcement of this contract. See Berner v. Lazzaro, 730 F.2d 1319, 1323 (9th Cir.1984) (exception to pari delicto doctrine appropriate in antitrust cases due to public stake in the litigation), aff'd sub nom, Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299 (1985).
 
 
 20
 The above analysis shows that the complaint filed by Habib was unwarranted under the law and that reasonable inquiry into the cases would have revealed that fact. The trial court did not abuse its discretion in finding the complaint was frivolous. From its finding of frivolousness, the trial court drew an inference that the complaint was filed for harassment purposes. Such an inference is permissible. Townsend, 929 F.2d at 1365. The district court did not abuse its discretion in finding that Habib filed the complaint for a wrongful purpose. We decline to accept the invitation issued by Haruyama and the Corporations to assess additional sanctions under Fed.R.App.P. 38 for bringing a frivolous appeal.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3