NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 31 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SHENZHENSHI HAITIECHENG SCIENCE AND TECHNOLOGY CO., LTD., a Peoples Republic of China corporation,<br><br>        Plaintiff,<br><br> and<br><br>VIRTUE GLOBAL HOLDINGS LIMITED, a business company incorporated in the British Virgin Islands,<br><br>        Intervenor-Plaintiff-<br>        Appellant,<br><br>  v.<br><br>REARDEN, LLC, a California Limited Liability Company; et al.,<br><br>        Defendants-Appellees. | No.   18-16859<br><br>D.C. No. 4:15-cv-00797-JST<br><br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted April 30, 2020
San Francisco, California

---

    *    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: WALLACE, GRABER, and COLLINS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge COLLINS

Intervenor-Plaintiff-Appellant, Virtue Global Holdings Ltd. (VGH), timely appeals from the district court's judgment in favor of Defendants-Appellees Rearden, LLC; Rearden MOVA, LLC; MO2, LLC; and MOVA, LLC (collectively, Rearden). The sole issue on appeal is whether the district court erred in holding, after a bench trial, that Rearden was the rightful owner of the visual effects technology known as MOVA Contour Reality Capture or MOVA (MOVA).[1] Although the Federal Circuit previously had exclusive appellate jurisdiction over this case, *see In re Rearden LLC*, 841 F.3d 1327, 1332–33 (Fed Cir. 2016), we now have jurisdiction under 28 U.S.C. section 1291. *See Breed v. Hughes Aircraft Co.*, 253 F.3d 1173, 1179 (9th Cir. 2001), *citing Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987). We affirm.

The district court did not abuse its discretion in rejecting VGH's unclean hands defense. *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010). The district court's finding that there was no evidence at trial revealing that VGH "relied on statements or omissions by Rearden or [Steve] Perlman" was not clearly erroneous. Any unconscientious conduct on Rearden's part therefore did not "directly 'infect[]' the actual cause of

---

[1] Rearden voluntarily dismissed its cross-appeal in case no. 18-16951.

2

action before the court." *Pond v. Ins. Co. of N. Am.*, 198 Cal. Rptr. 517, 522 (Ct. App. 1984).

The district court did not abuse its discretion in concluding that Gary Lauder's reliance on Perlman's statement was irrelevant for purposes of the unclean hands defense. That Perlman falsely told Lauder that he intended for Lauder to give MOVA to Greg LaSalle and Ken Pearce does not support an unclean hands defense because the defense only "applies to conduct between the litigants themselves, not to conduct of a litigant towards a non-party." *Mesnick v. Caton*, 228 Cal. Rptr. 779, 787 (Ct. App. 1986).[2] Perlman's "soiled hands" only affected Lauder and did not

---

[2] The dissent would remand to the district court to decide in the first instance whether the *in pari delicto* doctrine disentitles Rearden of the "affirmative relief" the district court ordered: VGH's surrender of the MOVA assets. But neither party raised this theory before the district court, and neither party has referenced this theory on appeal. We therefore cannot reach it. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020) (reminding us of our passive role as one ordinarily limited to the party-presented controversy); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259-60 (9th Cir. 1996) (holding that issues not specifically raised and argued in a party's opening brief are waived).

In any event, the district court's factual findings foreclose application of the *in pari delicto* doctrine in this case. The district court found that Perlman did not mislead LaSalle, VGH, or any of VGH's predecessors in interest. By contrast, the district court found that LaSalle intentionally worked to cut Rearden out of the deal and obtain the MOVA Assets for himself even though he knew his actions violated his obligations to Rearden. The district court's determination that VGH and its predecessors were more culpable actors than Perlman was not clearly erroneous. Based on these findings, the district court did not abuse its discretion in denying VGH's unclean hands defense. *See Tri-Q, Inc. v. Sta-Hi Corp.*, 404 P.2d 486, 497 (Cal. 1965) (observing that the *in pari delicto* defense does not apply to bar relief

"affect the equitable relations between the litigants." *Pond*, 198 Cal. Rptr. at 522.

Even if the parties did not litigate the veracity of Perlman's testimony before trial, the district court, as the trier of fact, did not violate VGH's right to due process when it discredited a portion of his testimony. This is not a case in which the district court resolved the case using "evidence that [was] only tangentially related to the issues actually pleaded prior to trial . . . ." *Consol. Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d 385, 396 (9th Cir. 1983). Instead, the central issue remained the same from the pleading stage through trial: whether LaSalle was authorized to purchase MOVA on his own behalf or whether he purchased MOVA on Rearden's behalf only to sell it later for his own benefit. That the district court discredited a portion of Perlman's testimony and credited Lauder's was not a due process violation but a permissible view of the evidence.

We need not decide whether the district court erred in concluding that LaSalle was required to manage MOVA for the benefit of Rearden under the Proprietary Information and Inventions Agreement (Agreement). The district court found that the Original MO2 was a subsidiary of Rearden such that LaSalle lacked control over it. VGH failed to challenge this finding, *i.e.*, argue that the finding was clearly

---

unless the parties "are truly *in pari delicto*"); *see also Norwood v. Judd*, 209 P.2d 24, 31 (Cal. 1949).

4

erroneous, until its reply brief. The argument is therefore waived. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted). Even if the argument was not waived, the district court's factual finding was not clearly erroneous.

Finally, the district court did not clearly err in finding that VGH and its predecessors knew that LaSalle did not own MOVA Assets when they bought it from LaSalle. Although the district court could have interpreted the evidence to find that VGH and its predecessors knew only of Perlman's claimed ownership of MOVA and that a dispute over MOVA's ownership existed, the objective evidence and the witnesses' testimony did not compel such a finding. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

**AFFIRMED**.



*Virtue Global Holdings Ltd. v. Rearden, LLC*, No. 18-16859

COLLINS, Circuit Judge, concurring in the judgment in part and dissenting in part:

I agree that the district court properly rejected the causes of action asserted by Intervenor-Plaintiff Virtue Global Holdings Limited ("VGH"), but I would vacate the district court's judgment to the extent that it grants affirmative relief to Defendants-Counterclaimants Rearden, LLC; Rearden MOVA, LLC; MO2, LLC; and MOVA, LLC (collectively, "Rearden"). Accordingly, I respectfully concur in the judgment in part and dissent in part.

1. The district court specifically found that "Perlman set up" MO2 by directing LaSalle to work with Rearden attorney Kalin in establishing MO2; that Perlman did so "to create a new subsidiary of Rearden"; that LaSalle knew that this was Perlman's intention; that therefore "MO2 was owned by Rearden LLC as of the date of its formation"; and that "LaSalle's actions in acquiring MOVA for MO2 were performed under his Employment Agreements with Rearden." Taken together, these findings establish that LaSalle acted as Rearden's *agent* in setting up MO2 and in acquiring the MOVA assets for MO2. *See Brown v. USA Taekwondo*, 253 Cal. Rptr. 3d 708, 734 (Cal. Ct. App. 2019) ("Agency is the relationship which results" when the principal "indicate[s] that the agent is to act for him" and the agent "agree[s] to act on his behalf and subject to his control." (simplified)). The district court therefore did not err in concluding that Rearden

owned the MOVA assets, not VGH. That alone is sufficient to defeat VGH's claims of ownership, without regard to whether the additional specific terms of the Proprietary Information and Inventions Agreement ("PIIA") would also have defeated VGH's theory of ownership.[1]

Beyond that, I agree with the majority that the district court's findings did not involve a violation of VGH's due process rights, *see* Memo. Dispo. at 4, and I also agree that the district court, as the trier of fact, permissibly concluded that VGH and its predecessors knew that LaSalle did not own the MOVA assets, *see id.* at 5. Because all of VGH's challenges to the district court's judgment rejecting VGH's affirmative claims are thus without merit, I agree that the district court's judgment should be affirmed in that respect.

2. I respectfully dissent, however, from the majority's holding that the district court's application of the unclean-hands doctrine did not amount to an

---

[1] I therefore agree with the majority's result on this issue, but I very much disagree with its rationale, which rests on the flawed theory that VGH "waived" this issue. Although VGH's opening brief packages its discussion of the ownership issue in a section devoted to arguing that Rearden "waived" its rights to the MOVA assets, that discussion unmistakably contends that "MO2 was not established as part of Rearden but instead for the benefit of LaSalle" and that "LaSalle and his Original MO2—not Perlman or Rearden—obtained ownership of the MOVA assets in February 2013." In my view, the majority relies on a "Simon Says" approach to issue preservation that is much too strict.

2

abuse of discretion.[2]  "A legal error is an abuse of discretion," *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297 (9th Cir. 2014), and in my view the district court did not apply the correct legal standards in resolving this issue.

The district court found, and the majority agrees, that unclean hands does not apply here because Perlman's fraud was directed at Lauder, a third party, and not at LaSalle or the corporate entities who bought the MOVA assets from him. *See* Memo. Dispo. at 2–3.  While it is generally true under California law that the doctrine of unclean hands is not applicable where only a third party was injured, *see Brown v. Grimes*, 120 Cal. Rptr. 3d 893, 908 (Cal. Ct. App. 2011) (a party asserting unclean hands "'must have been injured by the alleged wrongful conduct'" (citation omitted)), that general principle is not dispositive where, as here, *both parties* are participants in the wrongful conduct and the lawsuit asks the court to resolve their dispute about who owns the proceeds of that wrongful conduct.  In that particular scenario, another aspect of "the doctrine of unclean

---

[2] Preliminarily, I note one oddity about the procedural posture in which this issue is presented to us.  The relief ordered by the district court included an order *to VGH* to surrender the MOVA assets to Rearden, despite the fact that neither the operative cross-complaint nor the judgment mentions any causes of action by Rearden *against VGH*.  But given that the resulting relief nonetheless did run against VGH, that entity therefore has standing to raise the issue of unclean hands as a basis for overturning that order, despite the lack of any such formal cause of action against VGH.  Indeed, although the parties disagree as to whether the unclean-hands doctrine properly applies on the facts of this case, no party contends that VGH lacks standing to raise the issue of unclean hands.

3

hands" comes into play—namely, the *in pari delicto* doctrine. *Jacobs v. Universal Dev. Corp.*, 62 Cal. Rptr. 2d 446, 449 (Cal. Ct. App. 1997). Under that doctrine, a court should not help parties who both have engaged in wrongful conduct to divide the proceeds but should "'leave them just where it finds them, to settle these questions without the aid of the court.'" *Brown*, 120 Cal. Rptr. 3d at 908 (citation omitted). Whether to apply these principles in any given case turns on a variety of case-specific considerations. *See Johnson v. Johnson*, 237 Cal. Rptr. 644, 647–48 (Cal. Ct. App. 1987) (citing *Norwood v. Judd*, 209 P.2d 24 (Cal. Ct. App. 1949)). In my view, the district court therefore legally erred in applying a *per se* rule that, because the target of the fraudulent activity (Lauder) was a third party, unclean-hands principles did not apply.[3]

---

[3] I disagree with the majority's conclusion that VGH forfeited any reliance on the *in pari delicto* aspect of unclean-hands doctrine. The majority's forfeiture analysis rests on the premise that "neither party raised this theory before the district court," *see* Memo. Dispo. at 3 n.2, but that contention is factually inaccurate. After the district court failed to explicitly address VGH's unclean-hands defense in its statement of decision, VGH specifically noted the oversight and argued that unclean hands barred Rearden's requests for affirmative relief under the well-settled rule that "'where two or more have entered into a fraudulent scheme for the purpose of obtaining property in which all are to share, and the scheme has been carried out so that all the results of the fraud are in the hands of one of the parties, *a court of equity will not interfere on behalf of the others to aid them in obtaining their share, but will leave the parties in the position where they have placed themselves*.'" *See* D. Ct. Dkt. No. 439 at 5 (emphasis added) (citation omitted). The district court rejected this argument based solely on the ground that VGH had not been injured by the fraud, and that was legal error for the reasons that I have explained. It does not matter that VGH's opening brief in this court does not use

4

The majority contends that, even if the district court erred in failing to apply the correct legal principles to the unclean-hands issue, no remand is necessary. *See* Memo. Dispo. at 3 n.2. I disagree. Because application of the doctrine of unclean hands, including *in pari delicto* principles, is committed to the sound discretion of the trial court, *see Robertson v. Superior Ct.*, 109 Cal. Rptr. 2d 650, 655 (Cal. Ct. App. 2001) (citing *Moss v. Moss*, 128 P.2d 526, 528 (Cal. 1942)), the proper course here is to "'reverse the decision and remand the case to the district court to exercise its discretion in light of the correct standard,'" *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009) (citation omitted). By instead taking upon itself the task of applying the relevant standards to the district court's factual findings, the majority "overstep[s] the bounds of abuse of discretion review." *Id*. It may well be that the district court would reach the same conclusion on remand as the majority does, but that is its call to make, not ours.

Accordingly, while I agree that it is appropriate to uphold the *denial* of relief

---

the magic words "*in pari delicto*"; the *substance* of its unclean-hands argument on appeal remains the same—namely, that Rearden's misconduct bars it from relief "'*however improper may have been the behavior*'" of the opposing parties. *See* Opening Brief at 27 (emphasis added) (citation omitted); *see also Jacobs*, 62 Cal. Rptr. 2d at 449 (*in pari delicto* aspect of unclean-hands doctrine denies affirmative relief to "one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, *however improper may have been the behavior of the defendant*" (emphasis added) (citations and internal quotation marks omitted)). The issue of unclean hands is properly before us, and it is our obligation to apply the correct legal principles in answering it.

5

to VGH based on the district court's adverse rulings on the merits, I dissent from the majority's upholding of the *grant* of affirmative relief to Rearden without appropriate consideration of unclean-hands principles. I would remand the case so that the district court can decide in the first instance whether, in light of the appropriate factors, Rearden's participation in the wrongful conduct should disentitle it to any relief from the courts. *See Johnson*, 237 Cal. Rptr. at 648.